# WHEELING STEEL CORP. *v.* FOX, STATE TAX COMMISSIONER, ET AL.

No. 663.   Argued March 9, 10, 1936.—Decided May 18, 1936.

*Messrs. J. E. Bruce* and *Wright Hugus* for appellant.

The statutory provisions, as construed, operate to tax property over which the State has no jurisdiction.

198

200

*Mr. Homer A. Holt,* Attorney General of West Virginia, with whom *Messrs. Ira J. Partlow* and *W. Holt Wooddell,* Assistant Attorneys General, were on the brief, for appellees.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

This appeal presents the question of the validity of an *ad valorem* property tax laid by West Virginia upon accounts receivable and bank deposits of appellant, Wheeling Steel Corporation, organized under the laws of Delaware.

The tax statutes [1] were assailed upon the ground that, as applied, they violated the due process and equal pro-

---

[1] The statutes to which appellant refers are: Code of West Virginia, Chapter 11, Article 3, §§ 12, 13, 15, Article 5, § 1, Article 6, § 2, Article 12, § 71; Chapter 31, Article 1, § 79.

tection clauses of the Fourteenth Amendment of the Constitution of the United States.. The proceeding was a statutory one, instituted by appellant in the Circuit Court of Ohio County, West Virginia, to review a county assessment which was made as of January 1, 1933. The judgment of that court, reducing the assessment, was reversed by the Supreme Court of Appeals of West Virginia. *In re Wheeling Steel Corporation Assessment,* 115 W. Va. 553; 177 S. E. 535. The Circuit Court then entered final judgment which the Supreme Court of Appeals refused to review. The case comes here on appeal.

The case was submitted upon agreed statements which disclosed the following facts: The Corporation maintains its principal office in Delaware through the Corporation Service Company, as permitted by the laws of that State. It keeps there a duplicate stock ledger and records of all transactions with respect to its capital stock, the originals of such ledger and records being kept in New York City. It files reports and pays franchise taxes as required by Delaware.

The general business offices of the Corporation are located in Wheeling, Ohio County, West Virginia. There, the general books and accounting records are kept. The chairman of the board, president, treasurer, secretary and chief counsel reside at Wheeling. There, its stockholders' and directors' meetings, as permitted by the laws of Delaware, are held. Dividends, when declared, are ordered to be paid and distributed at meetings held at Wheeling, although the checks are drawn and distributed by the dividend disbursing agent located in New York City and are paid with funds there deposited.

The Corporation maintains sales offices in various cities of the United States. Sales contracts are negotiated and orders are taken by these offices subject to acceptance or rejection at Wheeling.

The principal manufacturing plants of the Corporation are located in the State of Ohio. The plant offices maintain original detailed accounting records showing materials received, railroad cars received and shipped, detailed labor costs, production and shipments, and detailed stocks of goods and payrolls. Employment offices are maintained at each plant. The Portsmouth, Ohio, plant makes up and mails out invoices for all products shipped from that plant, together with bills of lading and shipping notices. The other plants prepare complete invoices with exception of information relating to the price of materials described. The latter invoices are then forwarded to Wheeling where they are completed and mailed to the customer. Bills of lading and shipping notices are, however, mailed to customers from the individual plants. All invoices are payable in Wheeling. The majority of commercial accounts are paid by check issued at Wheeling. Payrolls are made up and payroll checks are prepared and signed at the various plants and are there distributed to the employees. Such checks are paid with funds on deposit in banks in the localities where the plants are situated.

The Corporation owns vessels operating on the Allegheny, Ohio and Mississippi Rivers, transporting coal and steel. These vessels are registered at the port of Pittsburgh.

The total assessed value of the real estate and tangible personal property owned by the Corporation on January 1, 1933, was $31,977,600. The assessed value of its real estate and tangible personal property in West Virginia was $8,673,205, or 27.10 percent. of the total.

At least 80 percent. of the sums spent by the Corporation in the conduct of its business, including the purchase of materials, maintenance and repairs of plants, building of improvements, property additions, payrolls and other operating expenses were made in connection

with the operation of its plants and business outside the State of West Virginia and all such payments, aside from moneys borrowed, were made from the proceeds of sales of its products. The moneys thus expended in the conduct of its business in Ohio and States other than West Virginia are expended by executive action taken at Wheeling, and by the drawing of checks or drafts at that place, except in connection with the payment of payrolls at its Portsmouth, Ohio, and Steubenville, Ohio, plants, where payroll checks or orders are drawn against moneys sent to banks at those points for the express purpose of meeting the payrolls and for incidental items as they arise. All moneys are controlled and the expenditures directed by the Wheeling office, and if the immediate expenditure be made elsewhere, it is made only under specific or general direction and control of that office.

On January 1, 1933, the Corporation had on deposit to its credit in various banks the sum of $2,307,773.61, of which $849,161.99 was on deposit in West Virginia. Of the last mentioned amount the Corporation had received $121,684.91 from sales of goods manufactured in West Virginia and the remainder from sales of goods manufactured in, and shipped from, points outside that State. The money on deposit in banks outside West Virginia on January 1, 1933, had been deposited by the Corporation by sending from its Wheeling office the original checks or drafts received from its customers. The deposits outside West Virginia are not segregated for the purpose of keeping separately the receipts from sales of products manufactured in, and shipped from, West Virginia plants. Ordinarily not more than 20 percent. of the total amounts on deposit at any time within and without West Virginia have been derived from sales of products manufactured in that State.

The total amount of the Corporation's accounts and notes receivable on January 1, 1933, was $2,234,743.11.

Of this amount, $374,410.42 were receivables for goods sold and manufactured in, and shipped from, West Virginia to resident and non-resident purchasers. It appeared that the Corporation had been assessed in Ohio, as of January 1, 1933, on accounts and notes receivable amounting to $250,133.42.

The Supreme Court of Appeals of West Virginia held that there had been "such a localization of the corporation's business at Wheeling" that there was imparted "to its entire intangible property a *prima facie* situs for taxation at that place." But the court thought that the "statutory limitation of the assessment to property 'liable to taxation'" indicated that the legislature "did not propose to tax intangibles which were primarily subject to taxation in another jurisdiction." And referring to the above mentioned taxation in Ohio, the Supreme Court of Appeals said: "For the purposes of this opinion, we assume that the claim of our sister state is well founded, and should be deducted from the assessment as corrected by the Tax Commissioner." And in remanding the cause to the Circuit Court, the Supreme Court of Appeals gave opportunity to have it determined "whether or not further deductions should be made in deference to the legal demands of other states." In the further proceeding in the Circuit Court, it was stipulated that "no states other than Ohio and West Virginia have assessed taxpayer upon any of its intangibles for the year 1933."

*First.*—The tax is not a privilege or occupation tax. It is not a tax on net income: See *Hans Rees' Sons* v. *North Carolina*, 283 U. S. 123, 133. It is an *ad valorem* property tax. We have held that it is essential to the validity of such a tax, under the due process clause, that the property shall be within the territorial jurisdiction of the taxing state. This rule receives its most familiar illustration in the case of land. The rule has been ex-

tended to tangible personal property which is thus subject to taxation exclusively in the State where it is permanently located, regardless of the domicile of the owner. *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194, 204, 206; *Frick* v. *Pennsylvania,* 268 U. S. 473, 489. We have said that the application to the States of the rule of due process arises from the fact "that their spheres of activity are enforced and protected by the Constitution and therefore it is impossible for one State to reach out and tax property in another without violating the Constitution." *United States* v. *Bennett,* 232 U. S. 299, 306. Compare *Burnet* v. *Brooks,* 288 U. S. 378, 401. When we deal with intangible property, such as credits and choses in action generally, we encounter the difficulty that by reason of the absence of physical characteristics they have no situs in the physical sense, but have the situs attributable to them in legal conception. Accordingly we have held that a State may properly apply the rule *mobilia sequuntur personam* and treat them as localized at the owner's domicile for purposes of taxation. *Farmers Loan & Trust Co.* v. *Minnesota,* 280 U. S. 204, 211. And having thus determined "that in general intangibles may be properly taxed at the domicile of their owner," we have found "no sufficient reason for saying that they are not entitled to enjoy an immunity against taxation at more than one place similar to that accorded to tangibles." *Id.,* p. 212. The principle thus announced in *Farmers Loan & Trust Co.* v. *Minnesota* has had progressive application. *Baldwin* v. *Missouri,* 281 U. S. 586; *Beidler* v. *South Carolina Tax Comm'n,* 282 U. S. 1; *First National Bank* v. *Maine,* 284 U. S. 312, 328, 329. But despite the wide application of the principle, an important exception has been recognized.

In the case of tangible property, the ancient maxim, which had its origin when personal property consisted in

the main of articles appertaining to the person of the owner, yielded in modern times to the "law of the place where the property is kept and used." *First National Bank* v. *Maine, supra.* It was in view "of the enormous increase of such property since the introduction of railways and the growth of manufactures" that it came to be regarded as "having a situs of its own for the purpose of taxation, and correlatively to [be] exempt at the domicile of its owner." *Union Refrigerator Transit Co.* v. *Kentucky, supra,* p. 207. There has been an analogous development in connection with intangible property by reason of the creation of choses in action in the conduct by an owner of his business in a State different from that of his domicile. *New Orleans* v. *Stempel,* 175 U. S. 309; *Bristol* v. *Washington County,* 177 U. S. 133; *Board of Assessors* v. *Comptoir National,* 191 U. S. 388; *Metropolitan Life Insurance Co.* v. *New Orleans,* 205 U. S. 395; *Liverpool & L. & G. Insurance Co.* v. *Board of Assessors,* 221 U. S. 346.

These cases, we said in *Farmers Loan & Trust Co.* v. *Minnesota, supra,* p. 213, "recognize the principle that choses in action may acquire a situs for taxation other than at the domicile of their owner if they have become integral parts of some local business." We adverted to this reservation in *Beidler* v. *South Carolina Tax Comm'n, supra,* p. 8, and in *First National Bank* v. *Maine, supra,* p. 331.

In the instant case, both parties recognize the principle and the exception. It is appellant's contention that the State creating a corporation has the sole right to tax its intangible property "unless such intangible property has acquired a 'business situs' elsewhere." Counsel for the State agrees with appellant on this point and in fact asserts "that, generally, the taxable situs of accounts receivable and of money in bank is at the domicile of the owner." But the State insists that the accounts receiv-

able and bank deposits of the Wheeling Steel Corporation had acquired a taxable situs in West Virginia and that they have no taxable situs in Delaware, where the Corporation was chartered.

*Second.*—The Corporation complied with the laws of the State of its creation in designating its "principal" office in that State. It is manifest that this designation, while presumably sufficient for the purpose, was a technical one and that the office is not a principal office so far as the actual conduct of business is concerned. While a duplicate stock ledger and records of transactions with respect to capital stock are maintained in Delaware, the business operations of the Corporation are conducted outside that State. The office in Delaware is maintained through the service of an agency organized to furnish this convenience to corporations of that description. To attribute to Delaware, merely as the chartering State, the credits arising in the course of the business established in another State, and to deny to the latter the power to tax such credits upon the ground that it violates due process to treat the credits as within its jurisdiction, is to make a legal fiction dominate realities in a fashion quite as extreme as that which would attribute to the chartering State all the tangible possessions of the Corporation without regard to their actual location.

The constitutional authority of West Virginia to tax the accounts receivable and bank deposits in question cannot be denied upon the ground that they are taxable solely in Delaware. The question is whether they should be deemed to be localized in West Virginia.

*Third.*—The Corporation established in West Virginia what has aptly been termed a "commercial domicile." It maintains its general business offices at Wheeling and there it keeps its books and accounting records. There its directors hold their meetings and its officers conduct the affairs of the Corporation. There, as appellant's

counsel well says, "the management functioned." The Corporation has manufacturing plants and sales offices in other States. But what is done at those plants and offices is determined and controlled from the center of authority at Wheeling. The Corporation has made that the actual seat of its corporate government.

The question here is not of the taxation of the plants in other States. The real estate, equipment and all tangible property there located are taxable by those States respectively. The accounts receivable with which we are now concerned are the proceeds of contracts of sale. While these contracts are negotiated and orders are taken at the various sales offices throughout the country, they are subject to acceptance or rejection at the Wheeling office. All invoices are payable at Wheeling. Thus the contracts of sale become effective by the action taken at the Wheeling office and there the accounts are kept and the required payments are made. In the face of these facts, it cannot properly be said that the credits arise either where the goods are manufactured or at the sales offices where the orders are taken. The tax is not on the manufacturing or on the privilege of maintaining sales offices. The tax is not on the net profits of a unitary enterprise demanding a method, not intrinsically arbitrary, of making an apportionment among different jurisdictions with respect to the processes by which the profits are earned. *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113, 120, 121; *Bass, Ratcliff & Gretton, Ltd.* v. *State Tax Comm'n,* 266 U. S. 271, 282, 283; *Hans Rees' Sons* v. *North Carolina, supra.* Such a tax on net gains is distinct from an *ad valorem* property tax on the various items of property owned by the Corporation and laid according to the location of the property within the respective tax jurisdictions. Here, the tax is a property tax on the accounts receivable, as separate items of property, and these are not to be regarded as parts of the manufacturing plants where the goods sold are produced.

Hence we cannot agree with appellant's counsel that the only fair rule in such a case is one "which allocates intangibles on the basis of tangible property owned and used in production of material for sale." This is to confuse two distinct subjects of *ad valorem* property taxation, the accounts receivable which arise from sales and the manufacturing plants. The accounts are not necessarily localized in whole or in part where the goods are made but are attributable as choses in action to the place where they arise in the course of the business of making contracts of sale. We said, in *Virginia* v. *Imperial Coal Sales Co.*, 293 U. S. 15, 20, that we were not able to perceive "any sound reason for holding that the owner must have real estate or tangible property within the State in order to subject its intangible property within the State to taxation."

The tax is laid both on accounts receivable and on the amount of deposits in banks. It appears that the Corporation has deposit accounts in several States. The deposits outside West Virginia were made by sending from the Wheeling office to the various banks the original checks or drafts received by the Corporation from its customers. From these deposit accounts the Corporation, by executive action at Wheeling, pays the amounts required for payrolls, materials, equipment, maintenance and operating expenses as these amounts become payable in the course of its operations in Ohio and other States. Checks and drafts on these bank accounts are drawn at Wheeling, except in connection with the payment of payrolls at certain manufacturing plants where payroll checks or orders are drawn against moneys sent to banks at such points for that express purpose and for meeting incidental items. The agreed statement shows that "All moneys are controlled and the expenditures directed by the Wheeling office, and if the immediate expenditure be

made elsewhere, such immediate expenditure is made only under specific or general direction and control of the Wheeling office." The so-called "money in bank" is not cash or physical property of the Corporation but is an indebtedness owing by the bank to the Corporation by virtue of the deposit account. From the Wheeling office proceed the items deposited and there the withdrawals are directed and controlled. In the light of this course of business as shown by the agreed statements of fact, we find no sufficient basis for concluding that the bank accounts thus maintained and controlled were properly attributable to the Corporation at any place other than at its general office at Wheeling. If there were any special circumstances by which any of these deposits could be deemed to have been localized elsewhere, they do not appear upon the present record.

The state court permitted the deduction of the amount of the intangible property of the Corporation which had been assessed in Ohio. That assessment, according to the agreed statement, was "on accounts and notes receivable." Counsel for the State, while insisting that the record does not show a taxable situs in Ohio of any of appellant's accounts receivable, has not taken a cross appeal or sought to assign error with respect to this part of the judgment of the Supreme Court of Appeals. The State is not in a position to complain of the deduction and no question as to its propriety is before us upon this record. Appellant urges that in Ohio "only the excess of receivables and prepaid items over current payables" is actually taxed, and that the deduction of "current indebtedness" accounts for the amount of the Ohio assessment. The inference is sought to be drawn that the amount of accounts receivables taken into consideration in Ohio was thus larger than the amount assessed. We find no basis for a conclusion whether, or to what extent, deductions were allowed in Ohio. The stipulation states

that the appellant had been assessed "on accounts and notes receivable" in the amount which the state court of West Virginia has allowed. Upon this record the question before us is with regard to the constitutional validity of the tax as assessed in West Virginia and not as to the amount or validity of any tax assessed elsewhere.

Further, we find no ground for appellant's contention that the statutes of West Virginia, under which the tax is laid, are invalid in the view that they require the taxation of all the intangibles of a foreign corporation doing business within the State, regardless of the place where such intangibles may properly be the subject of taxation. We think the argument is sufficiently met by the construction placed upon these statutes by the state court. It held that the legislature intended to limit the assessment to property which was liable to taxation according to the facts and the applicable principles of law. Nor would this inquiry of the state officials into the facts involve, as contended, any delegation of authority of which complaint could be made under the Federal Constitution. The taxing officials would apply the law to the facts of the case subject to review by the courts of the State and ultimately by this Court so far as any federal question might be involved.

Our conclusion is that appellant has failed to show that West Virginia in laying the tax has transcended the limits of its jurisdiction and thus deprived appellant of its property without due process of law.

*Fourth.* Appellant also contests the tax upon the ground that equal protection of the laws has been denied. The argument is that the statutes, as construed, require that the total intangibles of appellant are to be reported and assessed, except that portion taxed in other States, and hence that the statutes discriminate unlawfully against business corporations and in favor of natural persons. Appellant also urges discrimination on the

basis of a comparison with the provisions for the taxation of the property of railroads and other public utilities. Counsel for the State presents an analysis of the state statutes and insists that there is no discrimination between the assessment of the intangibles of corporations, either foreign or domestic, and of those of natural persons, or with respect to the assessment of corporations engaged in public service.

The contention of appellant is that we should deduce the protested discrimination from the face of the respective statutes. But we do not find that their provisions require the asserted construction and we have not been advised of decisions of the state court placing such a construction upon them. The decision in the instant case, as we have seen, is not that the statutes require taxation in West Virginia of all of the intangibles of appellant, without due regard to the place where they may properly be deemed to be localized, but only of such intangibles as upon the facts and the law, according to the course of business, may be deemed to be within the jurisdiction of the State. The record discloses no discrimination of which appellant is entitled to complain.

The judgment of the state court is

*Affirmed.*