(No. 25725.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* THE McGRAW ELECTRIC COMPANY, Appellant.

*Opinion filed December 12, 1940.*

Ross & Watts, (Clarence A. Ross, and Melvin A. Hardies, of counsel,) for appellant.

Thomas J. Courtney, State's Attorney, (Marshall V. Kearney, Jacob Shamberg, William P. Kearney, and Brendan Q. O'Brien, of counsel,) for appellee.

Mr. Justice Stone delivered the opinion of the court:

The circuit court of Cook county, in an action in debt for the recovery of personal property taxes for the year 1936, entered judgment against appellant in the sum of $26,811.56. Appellant brings the cause here for review, declaring that since it is a Delaware corporation and listed the only personal property it owned at its office in Chicago, at 120 South LaSalle street, where it was assessed, the assessment of the larger sum was illegal, as the property purporting to be assessed by the assessor was not within the jurisdiction of the taxing authorities.

There is no question of fact as to the character, origin or method of doing business of appellant. It is a Delaware corporation engaged in the manufacture and sale of electrical appliances, though it does no manufacturing or selling at any office in the city of Chicago. Its products are manufactured and sold from three separate points or divisions, as they are called, one of which is at Clearing, Illinois, in Cook county, another at Minneapolis, Minnesota, and a third at St. Louis, Missouri. The books and records of each division are maintained at that division's general office. All accounts receivable are payable to it at the general office of each division, and each division operates independently of either of the others except that the profits of each in excess of current requirements and working capital are, from time to time, transmitted to the Chicago office at 120 South LaSalle street, and are by Max McGraw and Judson Large, president and secretary-treasurer, respectively, of appellant, deposited in a common re-

serve fund in Chicago banks. The offices at 120 South LaSalle street are with those of Max McGraw and Company, an investment securities house, and appellant pays a proportionate share of the rentals as represented by the floor space occupied by appellant's president and secretary, and the percentage of time they spend on the affairs of the corporation. Once each month, the secretary-treasurer receives a copy of each division's balance sheet, sales record and income statement as of the end of the preceding month. These, in loose-leaf form, with the corporate minute books, records of deposits and disbursements from the reserve account, are the total records of appellant kept at 120 South LaSalle street. The president and secretary are the only persons authorized to draw on the reserve account. This account is used whenever a division requires additional working capital to supply that need. Also, appellant's Federal income taxes are paid out of the reserve account. As of April 1, 1936, these deposits amounted to $470,000.

Appellant filed no schedule of personal property for the year 1936 from 120 South LaSalle street. The assessor made no examination of the books and records of appellant located there, nor inspection of the property in the office at 120 South LaSalle street, but made an assessment by estimate in the columns having the following headings: "Furniture and fixtures," $500. "Net credits," $239.404. "All other personal property," $267,564. No assessment was made of money or bank deposits, as such. A fifty-per cent penalty was imposed for failure to file a schedule and the total sum was debased to thirty-seven per cent and a final assessed valuation of $281,634 was determined. No complaint was filed with the board of tax appeals. The tax at the then rate was extended against appellant under the items referred to, resulting in a tax, as we have said, of $26,811.56. Appellant paid that portion based on the assessment of furniture and fixtures.

On the hearing appellee, on cross-examination, brought out the facts as to the deposit. This evidence was objected

to on the ground that as no money assessment had been made, and the deposits had no taxing *situs* in Illinois, evidence relating to the bank account was irrelevant. Appellant moved to strike this evidence and for a finding for it, which was denied.

Appellant, in support of its contention that the Revenue act, as in force in 1936, did not authorize taxation of appellant's intangible personal property, urges that the rule in this State has been consistently held, from *Western Union Telegraph Co.* v. *Lieb,* 76 Ill. 172, down to *Wheelock, Lovejoy & Co.* v. *Gill,* 366 id. 378 and *Hart* v. *Toman,* 373 id. 462, to be that intangible personal property of a foreign corporation is not, under the Revenue act of Illinois, subject to assessment and taxation in this State. They point out that this court in *People* v. *Wilson Car Lines, Inc.* 369 Ill. 294, held that under the doctrine of *mobilia sequuntur personam* intangibles of foreign corporations are not subject to tax under our statutes.

In *Wheelock, Lovejoy & Co.* v. *Gill, supra,* the property assessed consisted of trade-marks, copyrights, patents, good-will, capitalized earning power and franchises, so far as the same were allotted to the Chicago office, in proportion to the business done by the use of the intangibles at the Chicago office. Such was held not to be taxable. That case is to be distinguished from the present case which appellee claims is an assessment of moneys in bank, used, or which may be used, for the benefit of the business of appellant done in this State. While both classes of property are generally treated as intangibles, a distinction exists between franchise, copyright, good-will and the like, on the one hand, and bank deposits used locally, on the other.

In *Western Union Telegraph Co.* v. *Lieb, supra,* the sole question was whether the capital stock and franchise of a New York corporation were taxable in Illinois.

*Hart* v. *Toman, supra,* was a suit to enjoin the collection of the 1938 taxes assessed on the capital stock of a New York corporation held by plaintiffs as trustees of two

stock trusts. Nearly ninety-eight per cent of the tangible property of the corporation was in Illinois and assessed here for that year, and it was held that the exemption of shares of capital stock, where the tangible property is assessed, applies equally to non-resident as well as domestic corporations. In *People* v. *National Box Co.* 248 Ill. 141, it was held that the language of section 1 of the Revenue act, "all real and personal property in this State," is broad enough to cover all property of every character, tangible or intangible.

The question here is, therefore, whether these bank deposits of a non-resident corporation are to be treated as under the doctrine of *mobilia sequuntur personam,* and so beyond the taxing jurisdiction of this State. Appellee says that they are not, for the reason that they have acquired a business *situs* in this State, and, as section 1 of the Revenue act is broad enough to cover intangibles as well as tangibles, where the *situs* of such brings them within the taxing jurisdiction of the State, the doctrine of *mobilia sequuntur personam* does not apply. The rule of "business *situs*" as conferring jurisdiction to tax intangibles, is one resulting from a development of the law on the subject. It is fundamental that under the fourteenth amendment of the United States constitution a State must have jurisdiction over property in order to subject it to any *ad valorem* taxation. The doctrine of *mobilia sequuntur personam* is a doctrine applying in many situations, of which taxation is but one. It is a court rule designed to bring about justice. (*Safe Deposit & Trust Co.* v. *Virginia,* 280 U. S. 83, 74 L. ed. 180.) The doctrine is carried no further than the reason for its existence requires, so there are exceptions to it and departures therefrom, not alone in matters of taxation but in other matters. *Wheeling Steel Corp.* v. *Fox,* 298 U. S. 193, 80 L. ed. 1143; *First Nat. Bank* v. *Maine,* 284 id. 312, 76 L. ed. 313; *Farmers Loan & Trust Co.* v. *Minnesota,* 280 id. 204, 74 L. ed. 371.

As applied to tangible property, the question of *situs* is not difficult to determine, as the rule has long been that physical location of tangibles within a State gives taxing jurisdiction, if that location be of such permanence that the property can be regarded as a part of the property in the State. Intangibles have created in the law considerable difficulty. As was said by the Supreme Court of the United States in *Wheeling Steel Corp.* v. *Fox, supra;* "When we deal with intangible property, such as credits and choses in action generally, we encounter the difficulty that by reason of the absence of physical characteristics they have no *situs* in the physical sense, but have the *situs* attributable to them in legal conception." It is there pointed out that an important exception has been recognized to the doctrine of *mobilia sequuntur personam*, as applied to intangible property, and that in modern times the rule has yielded to "the law of the place where the property is kept and used," citing *First Nat. Bank* v. *Maine, supra,* and it is noted that such property came to be regarded as having a *situs* of its own for the purpose of taxation and to be exempt at the domicile of its owner.

Such intangibles have been accorded a local tax *situs* if they have become the integral parts of some local business. (*Beidler* v. *South Carolina Tax Com.,* 282 U. S. 1, 75 L. ed. 131.) What will constitute the business *situs* of intangibles, is, perhaps, not a matter of definite delimitation. The question whether it exists is the inquiry in all cases of that kind. In *Wheeling Steel Corp.* v. *Fox, supra,* the tax levied was on accounts receivable and deposits in banks, as separate items of property, and the rule is laid down that where choses in action are created in the conduct by an owner of his business in a State other than that of his domicile, they have, for taxing purposes, a *situs* in the State where such business is conducted. The tax thus assessed is not one on the privilege of maintaining sales offices or on the business of manufacturing, nor is it a tax on net

profits. Tax on bank deposits is an *ad valorem* property tax on such deposits as separate items of property, and, as such, cannot be considered as parts of the manufacturing plants where the goods are made and sold. In the *Wheeling Steel Corp. case* it appeared that from the deposit accounts in West Virginia, pay-rolls, material costs, etc. and operating expenses were met in the operations of the company's business in that and other States, and it was held that under such course of business the bank accounts acquired *situs* in West Virginia .

Applying that rule to the record before us, which shows that the funds in the bank of appellant are accumulated reserves coming from appellant's three divisions, one of which is in Illinois, and are held subject to the needs and demands for additional capital of those three divisions, we are of the opinion that these bank deposits, under the rule announced in the *Wheeling Steel Corp. case* and others, acquired a *situs* in this State, and were, therefore, under the jurisdiction of the taxing authorities at the office of appellant in Cook county.

The question then comes whether the tax may be collected when the assessment is made on the two specified items "Net credits, $239,404" and "All other personal property, $267,564." No question is raised on the item of furniture and fixtures assessed at $500, as the tax on that item was paid. Nor is it questioned that the fifty-per cent penalty was properly imposed for failure to return the schedule, if the tax itself was legally assessed.

Counsel for appellant argue that appellee has not shown any "net credits" in its possession at its office in Chicago and that its personal property, having been listed as furniture and fixtures, the assessment under the item "All other personal property" is illegal. As we have seen, appellant filed no schedule. The Revenue act, as it existed when this tax was assessed, (Ill. Rev. Stat. 1935, chap. 120, p. 2664,) provided for listing personal property and how it was to

be listed. The use of schedules as provided by the tax commission was required. That act, by section 24, also provided: "Persons required to list personal property shall make out, under oath, and deliver to the assessor, at the time required, a schedule of the numbers, amounts, quantity, and quality of all personal property in their possession or under their control, required to be listed for taxation by them. It shall be the duty of the assessor to determine and fix the fair cash value of all items of personal property, * * * and in assessing notes, accounts, bonds and moneys, the assessor shall be governed by the same rules of uniformity that he adopts as to value in assessing other personal property."

By section 6 of the Revenue act as in effect in 1936, personal property was required to be listed in the following manner: "All his moneys, credits, bonds or stocks, shares of stock of joint stock of other companies, * * * moneys loaned or invested, annuities, franchises, royalties and other personal property." By section 27 of that act certain deductions were permitted to be made from the gross amount of credits. These were the amount of *bona fide* debts owing by such person or company. An exception as to banks is made in the application of this section and it further provided nothing in the act shall be construed to authorize any deductions from the value of any other item than credits. It will therefore be seen that the Revenue act then in force drew an important distinction between credits and money on deposit.

In *Sellars* v. *Barrett,* 185 Ill. 466, the point was made that the words "personal property" as used in the statute, did not include credits; that under section 292 of the Revenue act then in force defining "credits" as "Every claim or demand for money, labor, interest or other valuable thing due or to become due, not including money on deposit," credits could not be included in the class of property designated as personal property. Credits, however,

were held to be personal property. The requirements of section 24 are that one returning a schedule of his property is required to list as personal property his money and credits.

In *Morris* v. *Jones*, 150 Ill. 542, it was held that money, like horses, cattle or other chattel property, is taxable under the statute without reference to or deductions on account of indebtedness of the owner. Bank deposits, under the generally accepted rule, create the relationship of debtor and creditor. The depositor does not own the money deposited in the bank. However, under the statute, assessing bank deposits as net credits is not, as that act is construed in *Morris* v. *Jones, supra,* permissible, since deductions of debts may be made from net credits and not from money in the bank. Under the statute, as we have seen, the owner is required to list moneys, credits, etc., in his hands or in the hands of his agent or attorney in this State.

The Revenue act of this State, as it existed when this assessment was made, and again in the amendment of 1939, defines money and credit or credits as used in the act. Money is defined as gold, silver, currency, etc., in actual possession "and every deposit which the person owning, holding in trust, or having the beneficial interest therein, is entitled to withdraw in money on demand." Credits are defined as "every claim or demand for money, labor, interest or other valuable thing, due or to become due, not including money on deposit." While it may be noted that the Revenue act in force at the time the assessment here was made, does not contain definitions of money and credits as defined before and since, yet the distinction is clearly drawn between money in bank and credits, as is shown by the quotation from the act given above. We are of the opinion, therefore, that the act was sufficiently comprehensive to express and did express an intention of the General Assembly that no matter whether listed by the

owner or his agent, money on hand or on deposit, which he is entitled to withdraw on demand, is to be listed for taxation as money and not as net credits.

In this case the president and secretary of appellant were its agents in Illinois and in possession of its property here subjected to assessment. It was their duty to list for taxation the moneys of appellant in banks, as such, and, having failed to do so, it was the duty of the assessor to list appellant's property, using the best information obtainable, and listing it in the proper columns. While it is not disputed that appellant here owns no net credits, it is shown by the evidence that it had $470,000 on deposit in banks, which it should have listed. Not having done so, it was the duty of the assessor to list it as money, in the proper column for assessment as such.

The question is: Was it illegal to assess this fund or any part of it as "Net credits," or "All other personal property," or did the assessor comply fully with the law in making it as he did? The assessment of $239,404 as net credits cannot, as we have seen, under the decisions of this court, include moneys in bank, and such was an illegal assessment, since appellant owned no net credits.

Does the listing "All other personal property," assessed at $267,564, comply with the requirements of the act, or, since the property shown by the record to have been owned by appellant was money on deposit, should the assessment of it have been made in the column prescribed by the State Tax Commission and designated "Moneys or moneys in bank"? While it is in a sense true that bank deposits not listed are other personal property owned by the taxpayer, yet the question, here, is whether it is required that, in order to assess bank deposits for taxation, they shall be listed as required by the statute and according to the forms prescribed by the State Tax Commission. On failure of the taxpayer to return a schedule, the assessor is entitled

and required to assess the taxpayer's property to the best of his judgment and ability, using whatever information and facts are known or available to him. He may not, however, file a blanket assessment under the heading "All other personal property" for the purpose of possibly catching property of which he has no information or judgment as to its existence. Upon the failure of the taxpayer to file a schedule, the assessor may, but is not required to, conduct an investigation and may assess the property from the best knowledge and information available. This does not relieve him from basing such assessment on some knowledge or information. He is not at liberty to follow the suggestions of fancy. If the assessor had reason to believe, from available information, that these bank deposits existed, he had a right to assess them in the column "Moneys or moneys in bank." The purpose of the schedule prescribed by the State Tax Commission is to afford a listing of various kinds of personal property, each under its correct designation, that the taxpayer may know on what his taxes are to be paid. There are forty of these columns, the last of which is "Other personal property," clearly meaning personal property of a character not included in the other thirty-nine columns or designations. If the assessor had reason, based on information, to believe that appellant had personal property of a character not designated in the thirty-nine columns, he had the right to enter it in the column "Other personal property." If he had no such knowledge or information, he had no right to make such assessment, since to do so would be on mere chance or conjecture. *People* v. *Pullman Car and Manf. Corp.* 355 Ill. 438.

In *People* v. *Crowe Name Plate Co.* 357 Ill. 384, it was held that where the property owner makes no return under the item "Other personal property" and the assessor inserts a valuation under that item, the property owner

has a right to prove, in an action in debt to collect the tax, that he did not own any property falling within that classification.

Applying the rule of strict construction against the taxing power, we are of the opinion that the assessment against appellant's personal property, as made, was illegal.

The judgment is, therefore, reversed.

*Judgment reversed.*