**HECHT CO. v. DISTRICT OF COLUMBIA.**

**No. 7914.**

United States Court of Appeals for the District of Columbia.

Argued Feb. 17, 1942.

Decided June 30, 1942.

Mr. Wilton H. Wallace, of Washington, D. C., with whom Mr. E. F. Colladay, of Washington, D. C., was on the brief, for petitioner.

Mr. Glenn Simmon, Assistant Corporation Counsel, D. C., of Washington, D. C., with whom Messrs. Richmond B. Keech, Corporation Counsel, D. C., and Vernon E. West, Principal Assistant Corporation Counsel, D. C., both of Washington, D. C., were on the brief, for respondent.

Before STEPHENS, EDGERTON, and RUTLEDGE, Associate Justices.

EDGERTON, Associate Justice.

Petitioner seeks review[1] of a decision of the Board of Tax Appeals for the District of Columbia concerning personal property and business privilege taxes for the fiscal years ending on June 30 in 1938 and 1939. Petitioner, a Maryland corporation, operates department stores in New York, Baltimore and Washington, and smaller stores elsewhere, each as a largely independent unit. The taxes were assessed in respect of the Washington store.

Petitioner filed personal property tax returns and paid corresponding assessments. Afterwards, in 1939, the assessor audited petitioner's returns. He then found that petitioner had failed to follow the regulations in valuing its inventories and accounts receivable, and had failed to make a full return of cash. He revalued petitioner's assets, and made additional assessments which were paid under protest. Petitioner applied to the Board of Tax Appeals for refund. It contended that the reassessments were unauthorized and erroneous; and, in the alternative, that its increased payments of tangible personal property taxes "should be allowed as credits against the business privilege tax" which petitioner had paid. Respondent contended that the reassessments should be further increased. The Board of Tax Appeals overruled petitioner's contentions and sustained respondent's.

■ *Inventory.* Regulations reflected in the official forms of return provided: "Average inventory means net cost of the goods delivered or the actual cost of the goods minus any cash discounts from which a further deduction of 5% will be allowed." It is not shown, or in terms contended, that cost is an unreasonable basis for determining the value of inventory for the purposes of this tax. Petitioner contends that since it estimated its "cost" according to the "retail inventory method of accounting", by deducting from resale price the average percentage of "mark-up" over cost, it is entitled to deduct an additional 8% for "mark-down." No mark-down from resale price can affect cost. Moreover, the Board found that petitioner's mark-down represented the "average percentage reduction of merchandise below its ordinary or usual selling price" for miscellaneous reasons, including obsolescence, attracting customers, and advertising. Even if value were to be determined independently of cost, it would not be affected by a mark-down for advertising purposes. Since it does not appear how much of the mark-down was for such purposes, this is enough to defeat petitioner's claim.

■ *Accounts receivable.* Regulations and instructions in force when the returns were filed provided: "Accounts receivable on 30, 60 or 90 day accounts should be reported in the gross amounts less 5% deduction. Accounts receivable beyond 90 days should be reported in the gross amount less 10% deduction." When the assessor audited the return he discovered that petitioner had not followed these regulations. He thereupon reassessed its accounts receivable. In doing so he purported to apply new regulations, then in force, which permitted deductions of 10% on regular trade accounts and 25% on installment accounts. The Board of Tax Appeals vacated this reassessment, and made one substantially in accordance with the regulations in force when the returns were filed.[2] Petitioner contends that it should have the benefit of the new regulations, since it was the assessor's practice to apply them retrospectively when unreported instalment accounts were discovered on audit. But that practice rewards the making of incorrect returns, and is unauthorized.

The Board, though it allowed a deduction of 10% on petitioner's receivables, found that a fair valuation would be their face amount less 5%. Respondent contends that this finding is supported by schedules taken from petitioner's federal income tax returns for the fiscal years ending January 31, 1931 through January 31, 1940. These schedules list the totals of certain types of credit sales, and the losses on them. Credit sales during a year and accounts receivable on a tax day necessarily differ. Since the schedules relate to sales, the ratio derived from them cannot be applied to receivables. But the record does not support petitioner's contention that it is entitled to an allowance of more than 10%. Its figures concerning experience with wearing-apparel accounts are not a sufficient sample of its

[1] D.C.Code (1929) Supp. V, Tit. 20, § 975, (1940) § 47—2404.

[2] The record did not disclose which of petitioner's accounts ran over 90 days. The Board gave it the benefit of the doubt and allowed 10% on all receivables. We need not consider whether this was proper, since respondent does not complain.

credit accounts, and are not sufficiently authenticated and explained. Its credit and collection costs are not material here. Such costs no more reduce the value of credit accounts than salesmen's wages reduce the value of inventories.

■ *Cash.* The personal property tax law provided: "The moneys and credits, including moneys loaned and invested, bonds and shares of stock * * * of any person, firm, association, or corporation resident or engaged in business within said District shall be scheduled and appraised * * * and assessed at their fair cash value * * *."[3] Petitioner reported only cash on hand and in banks in the District of Columbia on the tax dates. It constantly shifted cash between Washington, Maryland and New York, as the needs of its stores required. The Board found that all its cash was available for use by its Washington store, and assessed against petitioner a percentage of its cash, wherever deposited, fixed by the ratio of Washington sales and profits to total sales and profits. We think the Board was right. In Maryland & Virginia Milk Producers' Ass'n v. District of Columbia[4] we held, on the authority of Wheeling Steel Corporation v. Fox,[5] that a Maryland corporation which did business and had a "commercial domicile" here was taxable on securities kept in Virginia but used in the business which it conducted here. The policies of petitioner's Washington store were determined in Washington. The fact that the employees of this store could not draw on funds until they were transferred to Washington banks is immaterial. Funds were freely transferred. Considerably more cash was necessary for the operation of the local store, and was usually deposited in local banks, than was on deposit here on the tax days. The amount, whether great or small, deposited here on those particular days would be a comparatively arbitrary measure of the amount held and used for the purposes of the local business.

*Reassessment.* Petitioner attacks all re-assessments, as such, and cites Hunt v. District of Columbia.[6] That case is not in point, since Hunt made a full return and valued his assets "in accordance with the instructions printed on the official blank."[7] Moreover, an amendment to the District of Columbia Revenue Act approved May 16, 1938, provides: "In the case of a false or incorrect return, whether in good faith or otherwise * * * or of a failure to include taxable property or assets belonging to the taxpayer in any return filed by such taxpayer, whether in good faith or otherwise, the tax may be assessed at any time * * *."[8]

■ Petitioner's claim that the business privilege taxes which it had previously paid should be abated to the extent of its additional payments of tangible personal property taxes is barred, since petitioner's appeal to the Board was made more than 90 days after notice of assessment of the business privilege taxes.[9] The statute contemplated abatement only in respect of such property taxes as were promptly paid.[10] Bull v. United States,[11] on which petitioner relies, turned on the fact that a tax had been innocently overpaid, through a mistake of the government, and its retention would therefore have been unjust. Here the government made no mistake. Petitioner overpaid its business privilege taxes only because, on its own responsibility, it made incorrect returns and underpaid its personal property taxes.

Affirmed.

STEPHENS, Associate Justice (dissenting).

In my view the cases of Tumulty v. District of Columbia, 1939, 69 App.D.C. 390, 102 F.2d 254, and Hunt v. District of Columbia, 1939, 71 App.D.C. 143, 108 F. 2d 10, establish that no reassessment of personal property can be made unless expressly provided for by statute. The statutes do not provide for reassessment of personal property except in one instance not applicable here. See D.C.Code (1940)

[3] D.C.Code (1929) Tit. 20, § 754, (1940) § 47—1207.

[4] 73 App.D.C. 399, 119 F.2d 787.

[5] 298 U.S. 193, 56 S.Ct. 773, 80 L.Ed. 1143.

[6] 71 App.D.C. 143, 108 F.2d 10.

[7] 71 App.D.C. page 146, 108 F.2d page 13.

[8] D.C.Code (1929) Supp. V, Tit. 20, § 965g, (1940) § 47—1408, 52 Stat. 357. This amendment was not applicable in the Hunt case because, as the record there shows, reassessment was made before the amendment was passed. Cf. Maryland & Virginia Milk Producers' Assoc. v. District of Columbia, supra.

[9] D.C.Code (1929) Supp. V, Tit. 20, § 974, (1940) § 47—2403.

[10] Cf. D.C.Code (1929) Supp. V, Tit. 20, § 970f.

[11] 295 U.S. 247, 55 S.Ct. 695, 79 L. Ed. 1421.

§ 47—1212.[1] The Board of Personal Tax Appraisers, if not satisfied with the correctness of a return of personal property, may reject the return and in such event may from the best information procurable or from examination of the personal property assess the same in such amount as seems just—notice of the rejection to be given to the party interested. § 47—1203. If at any time within any current year personal property subject to taxation shall have been omitted from assessment the Board of Personal Tax Appraisers may assess the same for the then current year, giving notice in writing to the persons so assessed. § 47—1213. Hunt v. District of Columbia, supra, in addition to holding that there can be no reassessment of personal property, holds that where an item of personal property has once been assessed, it cannot be treated by the Board of Personal Tax Appraisers as omitted property for the purpose of a supplemental or amended assessment at a higher valuation.

The taxpayer's return in the instant case included inventory, accounts receivable and cash, and these items were assessed by the Board of Personal Tax Appraisers. The higher valuations imposed after the audit are in my opinion an attempted reassessment. There was no rejection of the taxpayer's return as either false or incorrect. And since the taxpayer made return of the items of inventory, accounts receivable and cash, and since these items were then assessed, the increase of valuations by the Board of Personal Tax Appraisers cannot be treated as the assessment of omitted property. I do not understand it even to be contended that there was any omission of items so far as inventory or accounts receivable are concerned. While such a contention seems to be made in respect of the cash, I think it is not supportable. As stated by Mr. Chief Justice Hughes in Wheeling Steel Corp. v. Fox, 1936, 298 U.S. 193, 214, 56 S.Ct. 773, 80 L.Ed. 1143, "so-called 'money in bank' is not cash or physical property of the Corporation but is an indebtedness owing by the bank to the Corporation by virtue of the deposit account." A bank indebtedness as a taxable item was returned by the taxpayer. The difference between the taxpayer and the Board of Tax Appeals is not in respect of the existence of a bank indebtedness but in respect of the value thereof as a matter of law. In this respect I am unable to distinguish the instant case from Hunt v. District of Columbia, supra, where the taxpayer returned an equity in stocks and bonds, being bought on margin, at a given figure which represented under the then instructions of the Assessor the taxpayer's equity therein. The Board of Personal Tax Appraisers later attempted to assess the stocks and bonds at full value, on the theory that, since the names of the corporations issuing the stocks and bonds and the number of shares and bonds were not given in the return, the latter was not sufficient and therefore the excess of value above the amount stated by the taxpayer was omitted value and in contemplation of the statute omitted property. We held that this contention was not warranted. We ruled that it must appear that property has not been assessed at all before it can be treated as omitted property; that it was not sufficient that the appraisers through lack of information or otherwise might have erred in their judgment of the quantity, quality or value of the thing assessed.

I cannot agree with the majority view that § 47—1408 operates to render nugatory the rulings of this court in Tumulty v. District of Columbia and Hunt v. District of Columbia. I think it merely a statute of limitations and not a statute authorizing reassessments.

I do not understand Maryland & Virginia Milk Producers' Association v. District of Columbia, 1941, 73 App.D.C. 399, 119 F.2d 787, to overrule the holding of Hunt v. District of Columbia that where an item of personal property has once been assessed it cannot be treated by the Board of Personal Tax Appraisers as omitted property for the purpose of a supplemental or amended assessment at a higher valuation.

---

[1] There are provisions permitting the reassessment of real property. D.C.Code (1940) §§ 47—712, 47—716, 47—717, 47—721. Cf. §§ 7—632 and 47—1106.