CRAIN, Judge.
This matter is before the court on an appeal from a decision of the trial court up *573 holding the decision of the State Board of Tax Appeals which affirmed an assessment of additional franchise taxes by the Collector of Revenue against North Baton Rouge Development Company, Inc. for the taxable years 1963-1966 in the total amount of $26,829.07 together with interest from October 31, 1966.
The record, largely composed of the transcript of testimony taken and documentary evidence introduced at the Board of Tax Appeals’ hearing reveals that North Baton Rouge Development Co., Inc. is a Louisiana corporation domiciled in East Baton Rouge Parish. The employees listed on its payroll for the years in question lived and worked in Louisiana. The corporation was wholly owned by The Louisiana and Arkansas Railway Company which was in turn owned by Kansas City Southern Industries.
The North Baton Rouge Development Company was originally formed to develop industrial sites for the benefit of the Louisiana and Arkansas Railroad. Through the years it acquired real estate in Baton Rouge, Shreveport, and Lake Charles. Also it began investing in stocks, bonds, and negotiable instruments of other corporations. The principal securities purchased were in Rice Carden Corporation, Mid-America Pipe Line Company. Ransburg Electro-Coating Corporation, Commerce Insurance Company, the Boston-Herald-Traveler newspaper corporation, Theis Holdings, Ltd. of Australia, Chicago-Sky-way Toll Bridge Revenue Bonds, The Grasis Fabricating Company, The Design Center, Scholastic Press, Inc., and Comfort Equipment Company. None of these corporations had any substantial connection with the State of Louisiana and all the securities so purchased were kept in Kansas City, Missouri to be held for investment purposes. The decisions on the part of North Baton Rouge Development Company to make purchases of securities as well as decisions regarding the acquisition, alienation, and administration of the Louisiana real estate were made in Kansas City, Missouri. The funds to make the purchases in question were obtained by negotiations by the attorneys of Kansas City Southern usually with Missouri concerns.
LSA Revised Statute 47:601 provides:
“Every domestic corporation and every foreign corporation, exercising its charter, authorized to do or doing business in this state, or owning or using any part or all of its capital or plant in this state, subject to compliance with all other provisions of law, except as otherwise provided for in this chapter, shall pay a tax at the rate of one dollar and 50/100 ($1.-50) for each one thousand dollars ($1,000.00), or major fraction thereof on the amount of its capital stock, surplus, undivided profits, and borrowed capital, determined as hereinafter provided.”
The provisions containing the formula used to compute such taxes on both foreign and domestic corporations are found in LSA-R.S. 47:601 et seq., LSA-R.S. 47:606 provides the formula to be used in allocating taxable capital and reads as follows:
“A. General allocation formula.
For the purpose of ascertaining the tax imposed in this Chapter, every corporation subject to the tax is deemed to have employed in this state the proportion of its entire issued and outstanding capital stock, surplus, undivided' profits and borrowed capital, computed on the basis of the ratio obtained by taking the arithmetical average of the following ratios:
(1) The ratio that the net sales made to customers in the regular course of business and other revenue attributable to Louisiana bears to the total net sales made to customers in the regular course of business and other revenue. For the purposes of this Sub-section net sales and other revenues attributable to Louisiana shall be determined as follows:

(2) The ratio that the value of all of the taxpayer’s property and assets situat *574 ed or used in Louisiana bears to the value of all of its property and assets wherever situated or used. In determining value, depreciation and depletion reserves must be deducted from the book values of the properties in question. The various classes of property and assets shown below shall be allocated within and without Louisiana on the bases indicated: . . .”
Sub-section “h” under Section (1) provides the method of allocation as regards the interest and dividends received by the corporation in question in this case. It states as follows:
“(h) Other interest and dividends shall be attributed to the state in which the securities or credits producing such revenue have their situs, which shall be at the business situs of such securities or credits, if they have been so used in connection with the taxpayer’s business as to acquire a business situs, or, in the absence of such a business situs shall be at the commercial domicile of the corporation . . .”
Sub-sections “e” and “f” of Louisiana R.S. 606:A(2) provides the method of allocation of the corporate property and assets in question in this case largely consisting of securities and notes.
“(e) Notes and accounts other than those notes and accounts described under items (b) through (d) above shall be allocated to the state in which they have their business situs, or in the absence of a business situs, to the state in which is located the commercial domicile of the taxpayer.
(f) Stocks and bonds not included in (b) or (d) above shall be allocated to the state in which they have their business situs or in the absence of a business situs to the state in which is located the commercial domicile of the taxpayer . . .”
The controversy in this case arose when the North Baton Rouge Development Company failed to allocate the property and assets represented by the securities mentioned above as property situated or used in Louisiana. This affected both the revenue portion (Sub-section 1) and the property and assets portion (Sub-section 2) of the general allocation formula. The Collector listed the securities as assets to be allocated to Louisiana, a step which worked a drastic change in the average tax apportionment percentage and which resulted in additional taxes due in the amount of $26,829.07 plus interest for the years in question.
The trial court made three basic findings in deciding the case. First, that the intangibles in .question did not acquire a business situs either inside or outside the state of Louisiana. Secondly that if the corporation which owns the intangibles, the taxpayer, North Baton Rouge Development Company, has a commercial domicile, it is in the state of Louisiana. Thirdly, that if there is no commercial domicile, the general jurisprudential rule would then apply, and the intangibles would be considered situated and subject to tax at the legal domicile of the corporation, in this case, Louisiana, the state in which North Baton Rouge Development Company was incorporated. From these findings this appeal was taken.
Appellant first contends that the stock owned by it in Rice Carden Corporation and Kansas City Southern Industries qualifies for treatment under R.S. 47:606B as an intercompany item. That provision of the Louisiana Franchise Tax Act reads as follows:
“B. Allocation of intercompany items.
For the purpose of allocation, investments in, advances to, or revenues from a parent or subsidiary corporation shall be allocated to Louisiana on the basis of the percentage of capital employed in Louisiana for corporation franchise tax purposes by the parent or subsidiary corporation. A subsidiary corporation is any corporation the majority of the capital stock of which is actually, wholly or *575 substantially owned by another corporation and whose management, business policies and operations are, howsoever, actually, wholly, or substantially controlled by another corporation; which latter corporation shall be termed the parent corporation.”
Appellant contends and correctly so, that if the securities in question qualify as intercompany items, then they should not be considered in the allocation percentage since no evidence has been produced to show that any of the capital of the parent or subsidiary corporation in question was employed in Louisiana under the Franchise Tax Statute.
The record reveals that North Baton Rouge Development Company owned all the stock of Rice Carden Corporation. The business operations, management, policies, etc. were substantially controlled by the appellant. It was therefore a subsidiary corporation and its stock owned by appellant should be treated as an intercom-pany item. No evidence was produced to show that Rice Carden employed any capital in Louisiana and, therefore, none of the Rice Carden stock should be attributed or allocated to Louisiana.
Regarding the Kansas City Southern Industries stock, the record shows that the corporation was the parent corporation of the appellant. Kansas City Southern Industries owned substantially all the stock of Louisiana and Arkansas Railway Company, who owned all the stock of appellant. Kansas City Southern Industries controlled the management, policies, and operations of both Louisiana Arkansas Railway Company and the appellant. For the above reasons, we feel the trial court also erred in not allocating this stock as an intercom-pany item. As in the case of the Rice Carden stock, no evidence was introduced to show any capital of Kansas City Southern Industries actually employed in Louisiana and therefore under 606(B) none of the Kansas City Southern Industries’ stock owned by appellant can be allocated to Louisiana for tax purposes.
Now we turn to an examination of the situs of the remaining intangibles in question. Our examination must begin with an inspection of the statutory history of LSA-R.S. 47:606. This reveals that prior to its amendment in 1964, the provisions of that statute pertinent to this litigation were 606A(1) and (2). Under that statute in effect through 1964 the general allocation percentage was to be composed of the arithmetical average of:
“(1) The ratio that the net sales made to customers in the regular course of business and other revenue attributable to Louisiana bears to the total net sales and other revenue.
(2) The ratio that the value of all of the taxpayer’s property and assets situated or used in Louisiana bears to the value of all of its property and assets wherever situated or used. . . . ”
In 1964, the statute was amended to add among other sections 606A(l)(h) and 606A(2)b-f quoted earlier in this opinion.
The Louisiana Supreme Court in United Gas v. Fontenot, 241 La. 564, 129 So.2d 776 had occasion to interpret the above statute prior to its amendment in 1964. The Fontenot case arose with a companion case, United Gas v. Fontenot, 241 La. 488, 129 So.2d 748 involving the Louisiana Income Tax statute. In both cases, the issue was whether certain revenues, and income derived from intangible assets should be allocated to Louisiana for tax purposes. In the Fontenot decision concerning the franchise tax, the additional issue of whether the intangibles themselves should be allocated to Louisiana was presented. At the time of the decisions, the statutory provisions providing the rules to be applied in allocating intangibles for income tax purposes were very similar to the provisions later to be incorporated as rules of allocation in the 1964 amendment to the Louisiana Franchise Tax statute.
*576 Under LSA 47:606, the Supreme Court in the Fontenot cases, held that a different test applied fpr the allocation of the intangibles under the franchise tax and the income tax. Although the theory of “commercial domicile” was expressly provided for as a rule of allocation under the income tax statute, it was not provided for in the statutory franchise tax allocation. Under the court’s holding, the franchise tax statute allocated intangibles under the general rule that intangibles are considered situated at the situs of the corporation’s legal domicile, i. e. its incorporating state. The only exception under the statute was where the intangible obtained a “business situs” in another state.
In defining the concept “business situs”, the court adopted the definition set forth in its companion case, i. e. the intangible must become an integral part of the business of the corporation in the taxing state to acquire a situs there in opposition to the general rule regarding situs at the corporation’s legal domicile. If no business situs had been acquired, then the general rule applied insofar as the Louisiana Franchise tax was concerned.
The amendment of the statute in 1964 changed, the rules of allocation in question; however, it was not provided that the amendments were to be applied retroactively. For the taxable years 1963 and 1964, the rules expressed in the Fon-tenot case were the law. The trial court in the instant case has held that the intangibles did not acquire a business situs and with this holding, we agree. Even though the stock and other intangibles were situated in Missouri, they were not an integral part of the corporation’s business there, being merely passive investments. The Collector of Revenue was therefore correct in allocating the revenue and the intangibles under the general rule to the state of the corporation’s legal domicile, the incorporating state, Louisiana, for the years 1963 and 1964.
The amendment in 1964 injected the principle of “commercial domicile” into the State Franchise Tax Act altering the allocation test and making the holding in the Fontenot decision inapplicable insofar as it holds that the “commercial domicile” test is not a rule of allocation. Under the new statutory test, the situs of the corporation’s intangibles consisting of securities, stocks, and bonds were to be allocated first to the “business situs” of the intangibles, and if there were no business situs, then to the owning corporation’s “commercial domicile”. This new rule of allocation is very similar to that employed in the income tax statutes which were elaborated upon by the Supreme Coúrt in the Fontenot case. The principles therein expressed we feel are pertinent in applying the allocation tests under the 1964 amendment to the Franchise Tax Statute. With this in mind, we shall consider the trial court’s decision concerning the allocations for 1965 and 1966.
Regarding the trial court’s decision that the intangibles acquired no business situs, we find we must agree. In United Gas Corporation v. Fontenot, 241 La. 488, 129 So.2d 748, 1961, it was held that for intangibles to acquire a business situs they must have become an integral part of a local activity in the state. We agree with the trial court’s factual finding that the investments represented by the securities and other intangibles in this case were merely passive investments held in the name of North Baton Rouge Development Company and not used actively in connection with the business of this corporation. They were not used as an integral part of the business of the corporation in any state, therefore they acquired no real “business situs” under the test to be applied in determining this state’s right to impose franchise taxes.
We now approach the next issue, i. e., whether the North Baton Rouge Development Company had acquired a commercial domicile outside this state. If such is the case, then neither the income from the in *577 tangibles nor the intangibles themselves can be allocated to the state of Louisiana, and therefore cannot be included as Louisiana based revenue or property to increase the general allocation percentage taxable. If the commercial domicile of North Baton Rouge Development Company is in the state of Louisiana or if it has no commercial domicile as such, then the Collector of Revenue was correct in allocating the revenue and the property to the state of Louisiana.
Both the United States Supreme Court and the decisions of the Louisiana courts have played a part in establishing the rules and tests to be applied in determining the location of a corporation’s commercial domicile. In administering the test to be applied in determining the establishment of a commercial domicile, the United States Supreme Court in Wheeling Steel Corporation v. Fox, 298 U.S. 193, 56 S.Ct. 773, 80 L.Ed. 143 stated:
“The corporation established in West Virginia what has aptly been termed a ‘commercial domicile.’ It maintains its general business offices in Wheeling There, its directors hold their meetings and its officers conduct the affairs of the corporation. There, as appellant’s counsel well says, ‘the management functioned.’ The corporation has manufacturing plants and sales offices in other states. But what is done at these plants and offices is determined and controlled from the center of authority at Wheeling. The corporation has made that the actual seat of its corporate government.”
The Louisiana Supreme Court adopted these principles as its test to be applied to determine the commercial domicile in Arkansas Fuel Oil Corporation v. Fontenot, 225 La. 166, 72 So.2d 465 (1954).
The court in that case in holding a foreign corporation to have established its commercial domicile in this state, stated:
“In this case, the policies were carried on and the greater part of the business of the plaintiff corporation conducted at Shreveport by its officers who resided there, under [the] authority of the board of directors and that is what established for it ‘a commercial domicile’ and give it a business situs in Louisiana for the purpose of taxing its intangibles used in or incidental to its business here.” 72 So.2d 471.
The concept of commercial domicile was further defined by our Louisiana Supreme Court in United Gas v. Fontenot, 241 La. 488, 129 So.2d 748, 758 in which the court stated:
“And the third is that where the business of a corporation is so localized as to its commercial practices as to be actually managed and functioning in a state other than the state of incorporation (which is to it but a ‘paper’ domicile as distinguished from a real domicile), though its activities reach into two or more states, there may be, for tax purposes, a ‘commercial domicile’ sufficient to permit the state where the corporation has its chief place of business, and where the management functions are exercised, to tax all of the intangibles of the ‘corporation.’.’
The facts of this case are clear that the North Baton Rouge Development Corporation decision making process was carried on in the State of Missouri by the various Boards of North Baton Rouge Development Company, Louisiana and Arkansas Railway and Kansas City Southern Industries and it was from that state that substantially all management functions were performed. There the commercial domicile of North Baton Rouge Development Company was established during the time period in question. The trial court erred in finding otherwise.
The evidence is uncontroverted that all investment decisions regarding the Louisiana real estate and the securities and other intangibles in question were made by the board of directors in Kansas City. The *578 limited personnel employed in Louisiana had no real management responsibility. The corporation was wholly owned by a foreign corporation whose principal place of business was in Missouri. The corporate records, intangible assets, and books were kept in Missouri. In whole, the nerve center of the corporation was relatively isolated in one state, Missouri, and there was its commercial domicile. Under the statutory allocation provisions, therefore, the revenue for the remaining securities in question and the securities themselves should not have been allocated to Louisiana as contended by the collector of revenue. The trial court’s decision and the decision of the Board of Tax Appeals is therefore reversed in this respect, all cost to be paid by appellee.
Affirmed in part, reversed in part and rendered.