No. 12,140.

BLUEFIELDS ¦BANANA COMPANY VS. BOARD OF ASSESSORS AND CITY OF NEW ORLEANS.

A foreign corporation had an agent here, where it received and where it sold fruit and received the price for the same. Part of the proceeds were withheld in the hands of the agents for purposes incidental to the prosection of its business, and part deposited to the credit of the company, subject to the check of its local agent; also, for the prosecution of its business here and for such other purposes as the company might direct it to be applied to. The company transacted business in New Orleans precisely as did resident business men and firms.

*Held:* An assessment of the cash in bank of said corporation is proper and warranted by the provisions of Act 106 of 1890, an act to provide an annual revenue for the State. The rule *mobilia sequuntur personam* is a fiction of the law, not resting of itself upon any constitutional foundation, and which gives way before express law.

A PEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Ivy G. Kittredge* for Plaintiff, Appellee.

*F. C. Zacharie* for Tax Assessor and Tax Collector, Defendants, Appellants.

Argued and submitted December 17, 1896.
Opinion handed down January 4, 1897.

Plaintiff alleges itself to be a corporation incorporated under the laws of the State of Texas, and domiciled therein in the city of Galveston.

It represents that in the month of January or February, 1894, or thereabouts, and also in January or February, 1895, or thereabouts, the Board of Assessors for the parish of Orleans assessed it for the sum of five thousand dollars as cash in bank.

That it is a foreign corporation; that it has no property of any description subject to be assessed or taxed in the State of Louisiana; that it was never subject, in person or property, to the jurisdiction of the Board of Assessors, or bound in any manner to observe or note its illegal action in their regard; that said pretended assessment is illegal, null and void; that the State Tax Collector for the second district of of the city of New Orleans and the city of New Orleans are endeavoring, on the claim that said assessment is legal, to collect the taxes based thereon and threaten to levy upon debts and credits belonging to it; that it is entitled to have said assessment canceled and annulled and to have the State Tax Collector and the city of New Orleans restrained from collecting the taxes based thereon.

It prayed for and obtained a writ of injunction.

There was judgment for plaintiff and defendant appealed.

The opinion of the court was delivered by

NICHOLLS, C. J.    The State tax sought to be levied is seventy-six dollars on movable or personal property. It is assessed and levied under Act 106 of 1890. The portions of the sections embracing the tax are as follows: Sec. 1 " * * * all movable property and chattels, all personal property, all goods, wares and merchandise, and other stocks in trade in possession, on hand and under control;   * * * all property held, controlled or administered in each separate capacity, as president, cashier, treasurer, liquidator, assignee, master, superintendent, manager, sequestrator, receiver, trustee, stakeholder, depositary, warehouseman, keeper, curator, tutor, executor, administrator, legatee, heir, beneficiary, father, *agent*, attorney, usufructuary, *mandatory*, fiduciary or official capacity."  * * *   (The italics are our own.)

" This enumeration shall not be construed so as to exempt from

taxation any property or values not enumerated herein." Sec. 7. " It is made the duty of the tax assessors throughout the State to place upon the list all property subject to taxation, including merchandise or stock in trade on hand at the date of listing within their respective districts or parishes; * * * provided further, that in assessing mercantile firms, the true intent and purpose of this act shall be held to mean, the placing of such value upon the stock in trade, all cash, whether borrowed or not, money at interest, open accounts, credits, etc., as will represent in their aggregate a fair average on the capital, both cash and credit, employed in the business of the party or parties to be assessed. *All this shall apply with equal force to any person or persons representing business interests that may claim a domicile elsewhere, the intent and purpose being that no non-resident, either by himself, or through any agent, shall transact business here without paying to the State a corresponding tax with that exacted of its own citizens; and all bills receivable, obligations or credits arising from the business done in this State are hereby declared assessable within this State, and at the business domicile of said nonresident, his agent or representative.*"    (The italics are our own.)

The plaintiff is a Texas corporation. Louis Ivy testified: A part of its business is conducted in the city of New Orleans through the firm of John Wilson & Co. The company exported fruit from Spanish America to the United States for sale. The fruit was brought to New Orleans and there sold by the agents of the company, and the money was placed there to their credit in the Mutual National Bank and the Hibernia National Bank. The only funds which the company had at the time of the assessments were the deposits. When debts and obligations of the company in New Orleans fell due they were paid by checks on these two banks drawn by the witness (Ivy), its book-keeper, who held a power of attorney so to do. He was the financial agent of the firm. He received checks, greenbacks and silver in the ordinary current business for the proceeds of the sale of the importations, and it was his rule to deposit them in the banks to the credit of the company as soon as he could. He at times received money for the company from Wilson & Co., who sold their stock for them. He received checks, except for the small local trade, which probably amounted to three hundred dollars a month. He generally put out moneys through checks, sometimes paid from money he had in hand before the bank

closed. He rarely had on hand outside of the bank more than twenty-five dollars in silver. If he did it was because he received it after the bank was closed and it was too late to deposit it, and he could not do so until the next day. The largest amount was cash two hundred and seventy dollars, held for a day or two in the desk in the office until he could deposit it. He kept on hand, outside of the banks, an average of about twenty-five dollars a day to pay for telegrams, incidentals and all small amounts too small to draw a check for. If there was any surplus money in New Orleans it was at the command of the Galveston company.

The company chartered vessels in New York on voyages between New York and Galveston. The company instructed him to pay the charter money in New Orleans, the amount of the same being about "two thousand dollars a month." Plaintiff relies upon the proposition that moneys belonging to a foreign corporation, deposited to its credit in the banks of New Orleans, are mere credits—that they are personal property having no *situs* other than that of their owner, and are, therefore, not taxable in Louisiana. That it is a matter of no moment whether the corporation does business in New Orleans, and the deposits represent moneys derived from sales made there of fruit in the prosecution of its business. It relies upon the cases of the Liverpool, London and Globe Insurance Co. vs The Board of Assessors, 44 An. 765, and Gleason & Co. vs. The City of New Orleans, 45 An. 1.

On the part of the defendants it is contended that the State for the purposes of taxation may give a *situs* to personal property tangible or intangible, distinct from the domicile of the owner, provided it does not violate the inhibition of the State and Federal Constitutions; that while deposits in a bank to the credit of a foreign corporation are not taxable away from the domicile of the owner, as laid down in the 44th Annual (764-768) and 46th Annual (1), yet where such bank deposits are under the control of a resident agent who administers them and draws them out in whole or in part in the business of his principal, they can be taxed at the domicile of the resident agent. They cite the American and English Encyclopedia of Law, Vol. 25, page 125, and authorities in note 1, on page 127; 21 Vermont 152; 45 Missouri, 600; Brown vs. Houston, 114 U. S. 622; Cooley on Taxation, 2d Ed., 23; Welty on Assessments, Sec. 30, p. 42; 57 Bar. (N. Y.) 356; 23 N. Y. 440; 19 Kas. 415; 69 Mo.

457; Am. and Eng. Ency. of Law, Vol. 25, p. 138, and authorities in note 8; 44 An. 765; 66 How. Pr. 190; 4 Blatch. U. S. 263.

In the brief for the State counsel say: "That the fruit imported, or its proceeds in cash, was tangible property, can not be success-fully denied. To say that these proceeds were immediately depos-ited in bank to the credit of this foreign corporation and thereby became a credit of the corporation and passed beyond the power of the State, will not answer. The taxing power attached to the fruit and subsequently to its proceeds in money regardless of what dispo-sition was made of the money. No such shifty evasion of the law of this sort can be tolerated. The plaintiff company has regular selling agents here who sell their fruit and turn their proceeds over to their agent, who holds a bank power of attorney. The latter deposits it in bank, has the bank book, draws checks and disburses all money for this foreign corporation. This condition of affairs makes another exception to the rule *mobilia sequuntur personam.*"

In Insurance Company vs. The Board of Assessors, 44 An. 763, we said: "The evidence showed that plaintiff had no money loaned on interest nor bills receivable for money loaned, nor credits for goods sold. The issue was limited to credits for premiums due, but the evidence showed that it had 'money in possession;' that that was property within the State, subject to taxation. It was visible and tangible, and expressly made taxable by statute, and is taxable where situated."

In Railroad vs. The Board of Assessors, 44 An. 768, the court again said: "The plaintiffs, at no time, had money loaned on interest, none in possession on deposit or on hand, and none due for goods sold." The issue was as in the case of the London, Liverpool and Globe Insurance Company, the taxability of credits due for uncol-lected premiums.

The decision in Clason & Co. vs. The City of New Orleans, 46 An. 1, rested upon the special facts of that particular case. The plain-tiff was a foreign firm, having its domicile in Manchester, England. In one sense of the word, it did business in New Orleans; that is, it made purchases of cotton through an agent residing in that city. Its business was exclusively that of a purchaser. The cotton was not held in New Orleans for resale, for manufacture or for traffic of any kind, but was purchased for immediate export.

The funds with which the cotton was bought were really funds of

the purchasers in Manchester, subject to be drawn against there to operate payments. The moneys on deposit in bank in that case, represented the price of the property bought, and were placed there simply as a convenience for the purpose of enabling the parties to make use of commercial instrumentalities as facilities for making immediate payments.

If foreign merchants were subjected to taxation on moneys sent here simply for payment of the price of property bought for immediate export, some of which, in all probability, merely passed *in transitu* through the State for shipment, and some of which presumptively had been already taxed, it was very obvious that the trade of the city of New Orleans would be very seriousiy and injuriously affected unless the parties, by a mere shifting of their mode of doing business and making payments, should avoid the tax. The court did not think it was justified in assuming that it was the intention of the Legislature (even if it were authorized so to do) that moneys in bank, deposited here for the special purpose of paying for cotton bought for immediate export to Europe, should be taxed.

The case is different here. The foreign corporation had an agent here, where it received and where it sold fruit and received the price for the same. Part of the proceeds were withheld in the hands of the agents for purposes incidental to the prosecution of its business, and part deposited to the credit of the company, subject to the check of its local agent. Also for the prosecution of its business here, and for such other purposes as the company might direct it to be applied to. The company transacted business in New Orleans precisely as did resident business men and firms. It received all the advantages to be derived from the State and city governments which residents received, and we see no reason why it should not be taxed, as claimed in this proceeding, unless there be insuperable legal objections in the way. We find a statute of the State, which by its terms brings them under the operation of State and city taxation, and we are bound to give effect to its provisions unless they be in derogation of the Constitution. The unconstitutionality of the act is not pleaded, and we, of ourselves, see no unconstitutional features in it. The rule *mobilia sequuntur personam* is a fiction of the law, not resting of itself upon any constitutional foundation, and which gives way before express laws, destroying it in any given case where constitutional requirements themselves do not stand in the way.

Railroad Co. vs. Construction Co.

It is said that the taxation provided for can not be made effective. Whether this be true or not we can not say, but if true, the difficulties in the way of the execution of the law does not furnish a test as to its constitutionality.

We are of the opinion that the judgment appealed from is erroneous.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed.

It is now ordered, adjudged and decreed that the injunction issued herein be set aside and that plaintiff's demand be rejected with costs in both courts.