IN RE WHEELING STEEL CORPORATION ASSESSMENT

(No. 7970)

Submitted November 14, 1934. Decided November 27, 1934

*Homer A. Holt,* Attorney General, and *Ira J. Partlow,* Assistant Attorney General, for State of West Virginia, Ohio County, and Board of Education of Ohio County.

*Schmidt, Hugus & Laas* and *J. E. Bruce,* for Wheeling Steel Corporation.

HATCHER, JUDGE:

This proceeding involves the taxation of the intangible property of Wheeling Steel Corporation (hereinafter called the corporation), a foreign corporation which has

its chief place of business in this State. The assessor of Ohio County made a total asessment againt the corporation for intangibles of $4,963,950. That assessment was reduced by the Tax Commissioner to $4,491,323.67. The circuit court further reduced it to $496,095.33. The State and the county taxation units secured an appeal here.

The facts are agreed. The corporation was chartered in Delaware and is now qualified to do business in Ohio and Minnesota as well as West Virginia. The principal offices of the corporation are stated in its charter to be located in the city of Wilmington, Delaware, but the corporation performs no actual business in Wilmington and maintains there only such nominal office as the laws of Delaware require. The corporation's general business offices are located in Wheeling where it owns a twelve story office building. Approximately 43% of the building is occupied by the corporation for its office work. Its managing officers reside at Wheeling. It maintains sales offices in fourteen of the larger cities throughout the United States. On January 1, 1933, it owned coal properties in West Virginia and Ohio, and, through stock ownership, controlled coal properties in Pennsylvania and Kentucky. It owned iron ore properties in Minnesota. It owned four manufacturing plants in West Virginia and four in Ohio. It owned four steamboats, two motor ships, and ninety-three barges used in transporting coal and steel on the Allegheny, Ohio and Mississippi rivers. The agreed statement of facts shows the transaction of the following business at Wheeling:

> "The petitioner's (the corporation's) general books and accounting records are kept at the Wheeling office. * * *
>
> Sales contracts are negotiated and orders are taken by the various sales offices subject to acceptance or rejection at Wheeling.
>
> The Portsmouth, Ohio, plant makes up and mails out invoices for all products shipped from that plant, together with bills of lading and shipping notices. All other plants prepare complete invoices with exception of information with reference to the price of material describ-

ed therein. The latter invoices are then forwarded to Wheeling where they are completed and mailed to the customer. Bills of lading and shipping notices are, however, mailed to customers from the individual plants. All invoices are payable in Wheeling.

The majority of commercial accounts are paid by check issued in Wheeling. Payrolls are made up and payroll checks are prepared and signed at the various plants and are distributed to the employees by the respective plants. Such checks are paid with funds on deposit in banks in localities where the plants are situated. * * *

The capital stock is transferable in both New York City and Wheeling, but is registerable only at the office of the Registrar in New York City. Capital stock records are maintained in New York City and at the Wheeling Steel Corporation's Delaware office.

Dividends, when declared, are ordered to be paid and distributed at meetings held at Wheeling, although the checks are drawn and distributed by the Dividend Disbursing Agent located in New York City, and are paid with funds on deposit in banks in New York City."

The total assessed value of the real estate and tangible personal property owned by the corporation on January 1, 1933, was $31,977,600. The assessed value of its real estate and tangible personal property in West Virginia on January 1, 1933, was $8,673,205, or 27.10% of the total. The total shipments from plants located outside of West Virginia in 1932 amounted to $13,787,742.25. The total shipments from West Virginia plants in 1932 amounted to $4,402,872.01, or 24.20% of the total shipments. The corporation had bank deposits in five states on January 1, 1933, amounting to $2,307,773.61, of which there was $849,161.91 cash in West Virginia banks. Of the West Virginia bank deposits $121,684.91 was derived from the sale of goods manufactured in this state. The total amount of accounts and notes receivable on January 1, 1933, was estimated at the probable worth of $2,234,743.11. Of that sum $374,410.42 was due on account of goods manufactured in this state. The corporation pays to the state of Delaware only such taxes

as are requisite to protect its corporate franchise. It was assessed in Ohio in 1933, under the statutes of that state, $250,133.42 on its intangible property. That assessment was not included in the deductions allowed by the Tax Commissioner.

The assessment fixed by the circuit court consisted of the above items of $374,410.42 for credits, and $121,-684.91 for bank deposits.

The corporation charges cross-error. Its primary contention is that under the rule of *mobilia sequuntur personam* its intangible property cannot be taxed anywhere except in the state of Delaware. That rule is merely a convenient "fiction" and cannot be allowed "to obscure the truth." *Metropolitan Life Ins. Co.* v. *New Orleans,* 205 U. S. 395, 51 L. Ed. 853. The modern conception of the rule is well expressed by a leading authority on taxation as follows: "So far as applied to taxation it merely means that the situs of personal property for purposes of taxation is the domicile of the owner unless there is a statute to the contrary, or * * * in case of intangible property, it has acquired a business situs in a state other than the one where the owner is domiciled." Cooley, Taxation (4th Ed.), sec. 440. Accord: *Safe Deposit & T. Co.* v. *Virginia,* 280 U. S. 83, 74 L. Ed. 180, and the wealth of authority cited in Annotation 76 A. L. R. 806. The attorney general contends that this assessment is within both the exceptions mentioned by Cooley.

Code 1931, 11-3-12, as amended by the legislature, Acts First Extraordinary Session 1933, chapter 38, and Code 1931, 11-3-13, provide as follows: "Each incorporated company foreign or domestic having its * * * chief place of business in this state * * * shall annually * * * make a written report to the assessor, showing the following items: * * * (c) the amount of money on hand or on deposit anywhere subject to its check or draft on the first assessment day of the year; (d) the amount of credits and investments other than its own capital stock held by it on said date with their true and actual value." Upon receiving such report the assessor "shall assess the value

of all property of such corporation liable to taxation and enter the same as follows, viz: * * * all property in items (c) and (d) shall, together with their valuation, be entered in the personal property book of the county, and in the magisterial district wherein is the * * * chief place of business of such corporation." The statutes reflect clearly the legislative will to tax all intangible property of the corporation (item c and d) "liable to taxation."

It is well recognized in modern cases that intangible property may acquire a "business situs" for purposes of taxation in a state other than the state of the owner's domicile. Cooley, *supra*, section 465; *New Orleans* v. *Stempel*, 175 U. S. 309, 44 L. Ed. 174; *Bristol* v. *Washington Co.*, 177 U. S. 133, 44 L. Ed. 701; Annotation 79 A. L. R. 344. The facts agreed herein show that the management of the corporation radiates from Wheeling, and that the major part of its executive business is performed or initiated there. We are of opinion that such a localization of the corporation's business at Wheeling imparts to its entire intangible property a *prima facie* situs for taxation at that place. There is no inhibition in the Federal Constitution against the taxation of such property by the state. *Board of Assessors* v. *Comptoir National*, 191 U. S. 388, 48 L. Ed. 232. Wherefore, the learned trial court should not have limited the assessment to credits and cash arising merely from sales of the corporation's West Virginia products. On the other hand, the Federal Court cautions against an assessment "intrinsically arbitrary" of a unitary corporation enterprise which is conducted in several states, and warns that an apportionment of its intangible property among such states for purposes of taxation may be requisite. See *Hans Rees' Sons, Inc.* v. *North Carolina*, 283 U. S. 123, 75 L. Ed. 879. The statutory limitation of the assessment to property "liable to taxation" indicates that the legislature had this contingency in mind and did not propose to tax intangibles which were primarily subject to taxation in another jurisdiction. The agreed statement of facts shows that Ohio has, by virtue of its statutes, claimed the right to tax intangible property of the cor-

poration to the extent of $250,133.42. For the purposes of this opinion, we assume that the claim of our sister state is well founded, and should be deducted from the assessment as corrected by the Tax Commissioner. The agreed statement does not disclose a like claim by any other competent jurisdiction. But since this proceeding was tried under wrong conceptions of the law by the several parties hereto, it may be that all the pertinent facts were not developed. Therefore we are of opinion to remand this proceeding to the circuit court in order that it may be determined whether or not further deductions should be made in deference to the legal demands of other states.

The judgment of the circuit court is accordingly reversed, and the case remanded.

*Reversed and remanded.*