*171
 
 LeBLANC, Justice.
 

 On October 31, 1950, the Collector of Internal Revenue for the State of Louisiana, who will hereafter be referred to as the Collector, made demand on Arkansas Natural Gas Corporation for additional corporation franchise taxes for the years 1946, 1947 and 1948 in the amount of $96,136.88. This was the amount assessed against the corporation over and above the amount of $2,581.20 which it had paid.
 

 The Arkansas Natural Gas Corporation paid the amount demanded, and, availing itself of the provisions of LSA-R.S. 47 1576, gave notice to the Collector of its intention to file suit for the recovery thereof. In due time it filed the present suit seeking judgment against the Collector in the amount paid on November 13, 1950 with interest at the rate of two per cent per annum from that date, all as provided for in the same section of the Revised Statutes which affords it this remedy.
 

 In its petition plaintiff avers that it is a corporation organized under the laws of the State of Delaware and domiciled in that State and that it is now and has at all times been authorized to transact business in the State of Louisiana, its agent for the purpose of serving process in Louisiana being located in Shreveport, Caddo Parish.
 

 It avers that it does not actually engage in or transact business in Louisiana and has not transacted any business in this State since prior to the year 1945. It alleges that it owns all of the issued and outstanding shares of the capital stock of Arkansas Louisiana Gas Company, a Delaware Corporation and Arkansas Fuel Oil Company, a West Virginia Corporation, each of which operates both within and without the State of Louisiana and each having paid all Louisiana Corporation franchise taxes for the years 1946, 1947 and 1948. It annexes to its petition an exhibit which it states correctly sets forth the amounts of its revenues from, investments in and advances to each of the said two corporations and also correctly sets forth, for each of the years 1946, 1947 and 1948, the percentages of the capital of each of the two said corporations which were employed in Louisiana for Louisiana Corporation franchise tax purposes.
 

 The Collector had assessed the additional taxes demanded under the provisions of Act 10 of the Extra Session of 1935 as amended by Act 201 of 1946, LSA-R.S. 47:601, and in this connection plaintiff avers that, because (1) interest and dividends received by it from the other corporations are not revenues attributable to Louisiana and (2) the amounts of its investments in and advances to these corporations are not property and assets situated in Louisiana, the Collector,
 
 in so
 
 allocating them to Louisiana made a determination of tax liability which is contrary 'to the provisions of the statute and constitutes an unlawful exaction from petitioner.
 

 
 *173
 
 In the alternative plaintiff pleaded the -unconstitutionality of the statute under ■which the tax determination was made on the ground that it deprived it of its property without due process of law in violation of both the Louisiana Constitution and the Constitution o'f the United States; that it denies to petitioners the equal protection •of laws and that it is arbitrary and discriminatory, excessive in amount, is not uniform and amounts to double taxation.
 

 The Collector of Revenue answered, placing the contentions of the plaintiff at issue by denying the pertinent allegations of its petition. Assuming the position of a plaintiff in reconvention he then alleges that if the Court should find that plaintiff’s investments in and advances to Arkansas .Louisiana Gas Company and Arkansas Fuel Oil Company are not properly allocable in part within and in part without the State of Louisiana, under the provisions of the statute, then the entire amount of such investments and advances shall constitute property situated in Louisiana by virtue of plaintiff’s commercial domicile being located in this State. Computing the corporation franchise tax on this basis for each of the three years involved, the Collector alleges that plaintiff is indebted unto the State for additional taxes in the amount of $189,056.54 which he prays judgment for in reconvention. Plaintiff filed an exception of no cause or right of action to the reconventional demand.
 

 The case was submitted to the lower Court on a statement of facts set forth in a written stipulation signed by counsel on both sides, together with several exhibits annexed thereto. The district judge handed down written reasons for the judgment in which he upheld the Collector’s interpretation of the statute and his method of applying the tax. He accordingly dismissed the plaintiff’s suit. He also sustained an exception of no cause or right of action to defendant’s reconventional demand and dismissed the same. Plaintiff appealed from the judgment insofar as it dismissed .its suit. The Collector did not appeal from that part of the judgment dismissing the reconventional demand and therefore it is no longer an issue in the case.
 

 As incorporated in the Revised Statutes, LSA-R.S. 47:601, the statute which concerns this case provides:
 

 “Sec. 601. Every domestic corporation
 
 and,every foreign corporation, exercising its charter, atithorized to do or doing brtsiness in this state,
 
 subject to compliance with all other provisions of law, except as .otherwise provided in this Chapter, shall pay a tax at the rate of one dollar and fifty cents ($1.50) for each one thousand dollars ($1000.00), or major fraction thereof on the amount of its capital stock, surplus, undivided profits, and borrowed capital determined as hereinafter provided; provided- that the minimum tax shall not be less than •ten dollars ($10.00) in any case.
 
 The tax levied herein is due and payable
 
 
 *175
 

 for the privilege of carrying on or doing business, the exercising of its charter, or the contimiance of its charter within this state.
 
 (Italics ours.)
 

 Section 602 relates to the determination of taxable capital. It reads as follows:
 

 “Every corporation taxed under this chapter shall determine the amount of its issued and outstanding capital stock, surplus, undivided profits and •borrowed capital as the basis for computing the franchise tax levied under this Chapter and determining the extent of the use of its franchise in this state.”
 

 Section 603 provides how borrowed capital is to be determined, section 604 how to determine the capital stock and section 605 how surplus and undivided profits are to be determined. Section 606, subd. A then provides the method of allocating the taxable capital of the corporation and 606, subd. B, that of intercompany items.
 

 Section 606, subd. A reads: “For the purpose of ascertaining the tax imposed in this Chapter, every corporation subject to the tax is deemed to have employed in this state the proportion if its entire issued and outstanding capital stock, surplus, undivided profits and borrowed capital, computed on the 'basis of the ratio obtained by taking the arithmetical average of the following ratios:
 

 “(1) The ratio that the net sales and • other revenue attributable to Louisiana bears to the total net sales and other revenue. The Louisiana sales factor shall be one-half of the sales secured through the efforts of salesmen attached to or sent from offices, agencies, or other places of business within the state, plus one-half of the sales of merchandise delivered in Louisiana.
 

 “(2) The ratio that the value of all of the taxpayer’s property and assets situated or used in Louisiana bears to the value of all of its property and assets wherever situated or used. In determining value, depreciation and depletion reserves must be deducted from the book values of the properties in question.”
 

 Section 606, subd. B which relates to intercompany items provides as follows:
 

 “For the purpose of allocation, investments in, advances to, or revenues from a parent or subsidiary corporation shall be allocated to Louisiana on the basis of capital employed in Louisiana for corporation franchise tax purposes by the parent or subsidiary corporation.
 
 A subsidiary corporation is any corporation the majority of the capital stock of which is actually, zvholly or substantially owned by another corporation and whose management, business policies and operations are, howsoever, actually, wholly or substantially controlled by another corporation; which latter cor
 
 
 *177
 

 poration shall he termed the parent corporation.”
 
 (Italics ours.)
 

 The contention of the plaintiff, as we view it, is that here we are dealing with taxation of an intangible whose situs under the doctrine of “mobilia sequuntur per.sonam”, (movables follow the owner), is .at the domicile of the owner; that it is the owner of the intangibles being taxed .and they should be deemed to have their situs in the State of Delaware where it, the owner, has its domicile. The contention of the Collector, on the other hand, is that the intangibles should be allocated to Louisiana because Delaware is merely the incorporating or qualifying State of the plaintiff where none of its operations are conducted and none of the intangibles are used in connection with its business; that its business activities are here in Louisiana and the intangibles are used Jiere jn connection with those activities .and have acquired a business situs here. Further, that the Louisiana Franchise Tax is a tax for the privilege of carrying on •or doing business here and therefore it is not limited 'by the situs of the owner •of the intangibles sought to be taxed.
 

 The doctrine “Mobilia sequuntur personam” is not applicable in cases of this kind. In Metropolitan Life Ins. Co. v. City of New Orleans, 205 U.S. 395, 27 S.Ct. 499, 501, 51 L.Ed. 853, where it is referred to as a “fiction”, it is stated that neither that fiction “nor the doctrine that credits evidenced by bonds or notes may have the situs of the latter, can be allowed to obscure the truth.” Blackstone v. Miller, 188 U.S. 189, 23 S.Ct. 277, 47 L.Ed. 439 is cited as authority for that statement to which significantly, the Court added: “We are not dealing here merely with a single credit or a series of separate credits, but with a business.”
 

 In First Bank Stock Corp. v. State of Minnesota, 301 U.S. 234, 57 S.Ct. 677, 678, 81 L.Ed. 1061, the Court stated that:
 

 “The doctrine that intangibles may be taxed at their business situs, as distinguished from the legal domicil of their owner has usually been applied to obligations to pay money, acquired in the course of a localized business. ?{i
 
 %
 

 “But it is equally applicable to shares of corporate stock which, because of ■their use in a business of the owner, may be treated as localized, for purposes of taxation, at the place of the business * *
 

 The following statement by the Court in Wheeling Steel Corp. v. Fox, 298 U.S. 193, 56 S.Ct. 773, 778, 80 L.Ed. 1143, also appears to be quite pertinent:
 

 “The corporation established in West Virginia what has aptly been termed a ‘commercial domicile.’ It maintains its general business offices at Wheeling and there it keeps its books and accounting records. There its directors hold their meetings and
 
 *179
 
 its officers conduct the affairs of the corporation. There, as appellant’s counsel well says, ‘the management functioned.’ The corporation has manufacturing plants and sales offices in other states. But what is done at those plants and offices is determined and controlled from the center of authority at Wheeling. The corporation has made that the actual seat of its corporate government.”
 

 The question with which we are concerned received some consideration by this Court in the case of Bluefields Banana Co. v. Board of Assessors, 49 La.Ann. 43, 21 So. 627, 630, where a foreign corporation was attempting to- resist an assessment of the cash it had to its credit in local banks in New Orleans, which had been assessed under a State statute. The corporation had been successful in obtaining an injunction against the Board of Assessors but the judgment by which the injunction had been granted was reversed on appeal. The following statement in the opinion has close relation to the issue now befor.e us:
 

 “The foreign corporation had an agent here, where it received and where it sold fruit, and received the price for the same. Part of the proceeds were withheld in the hands of the agent for purposes incidental to the prosecution of its business, and part deposited to the credit of the company, subject to the check of its local agent; also for the prosecution of its business here, and for such other purposes as the company might direct it to be applied to. The company transacted business in New Orleans, precisely as did resident business men and firms. It received all the advantages, to be derived from the state and city-governments which the residents received, and we see no reason why it should not be taxed, as claimed in •this proceeding, unless there be insuperable legal objections in the way. We find a statute of the state which,, by its terms, brings them under the-operation of state and city taxation, and we are bound to give effect to-its provisions, unless they be in derogation -of the constitution. * * *- The rule, ‘Mobilia sequuntur personam,’ is a fiction of the law, not-resting of itself upon any constitutional foundation, and which gives, way before express law, destroying it. in any given case where constitutional requirements themselves do not stand in the way.”
 

 We think that the stipulation on’ which this case was submitted to the Court, leaves no dou-bt but that the plaintiff corporation has definitely established a “commercial domicile” at Shreveport, in Caddo» Parish, Louisiana. It has qualified and! been authorized to do business in this State since 1928 and has paid, during all these years, the corporation franchise tax.
 
 *181
 
 •■due by it on its business which it reported ..as “Holding Company and Gas Pipeline Business.” It maintains its principal office .in Shreveport where its principal officers, including the president, vice-president and .general manager, secretary, treasurer and .assistants reside. From this office it collected its revenues and kept deposits in ‘Louisiana banks during the years 1946, 1947 and 1948 averaging several hundred •thousand dollars from which it paid dividends to its stockholders throughout the • country, and also paid salaries and other • expenses.
 

 It kept all the stock of its subsidiaries -in its Shreveport office and exercised control over this stock by electing their boards • of directors. In many instances the same individual was elected to and served on •plaintiff’s board and also on the board of directors of its subsidiaries. The point is strongly urged that none of plaintiff’s •meetings of its board has ever been held in Louisiana; that during the years 1946, 1947 and 1948, all of its board meetings :as well as those of its subsidiaries were held in the City of New York and there ■.the policies of the corporation were formmlated. But the place where the board’s •meetings were held would seem to be im:material in fixing the situs where the intangibles of the corporation could be taxed ■•unless the carrying out of its policies and •the management of the corporation’s business were, in a large part, conducted at .that same place. In this case, the policies were carried on and the greater part of the business of the plaintiff corporation conducted at Shreveport by its officers who resided there, under authority of the board of directors and that is what established for it “a commercial domicile” and gave it a business situs in Louisiana for the purpose of taxing its intangibles used in or incidental to its business here. Applying the provisions of the statute as he construed them, the Collector . allocated to Louisiana a proportion of the interest and dividends received by plaintiff from the two subsidiaries; he also allocated to Louisiana a proportion of the amount of plaintiff’s investments in and advances to said subsidiaries and also a proportion of plaintiff’s deposits in Louisiana banks; further, he allocated to Louisiana a proportion of advances to and revenues from Arkansas Pipeline Corporation, a subsidiary of one of plaintiff’s subsidiaries. It is these four allocations to which plaintiff specifically objects, its contention being that these are not revenues attributable to Louisiana nor are these assets situated or used in Louisiana.
 

 What plaintiff is contending is that it has little or no revenues attributable to Louisiana nor does it have assets of any consequence situated or used in Louisiana, so that under the arithmetical average of the two ratios given in Section 606, subd. A of the statute, the proportion of its “taxable capital” employed in Louisiana would be almost negligible. Be that
 
 *183
 
 as it may, the general allocation formula of Section 606, subd. A is not the formula under which the Collector is allocating these revenues and assets to Louisiana. He is here applying the provisions of Section 606, subd. B, which relate to the allocation of “intercompany items” 'to Louisiana, and which provides that investments in, advances to, or revenues from a subsidiary corporation shall be allocated to Louisiana as “taxable capital” of the parent corporation on the basis of the percentage of capital employed in Louisiana for corporation franchise tax purposes by the subsidiary corporation. This, the Collector contends, means that if the subsidiary, under the general allocation formula, has 50% of its “taxable capital” allocated to Louisiana as capital employed in Louisiana, then 50% of all investments in or advances to a subsidiary corporation
 
 by
 
 the parent corporation are allocated to Louisiana as “taxable capital” of the parent corporation, and 50% of all revenues received from a subsidiary corporation by the parent corporation are allocated to Louisiana as “taxable capital” of the parent corporation. This latter section would not seem to lend itself to any other interpretation. It is in the nature of a special provision governing the allocation of “taxable capital” in the case of a parent or subsidiary corporation.
 

 Plaintiff contends that this provision is merely a limitation on the amount of assets actually situated or used in Louisiana which can be allocated to Louisiana under Section 606, subd. A; that it does not authorize a tax on assets situated and used outside Louisiana. This could not be .the meaning of this provision as the location of the assets of the corporation is of no importance in this statute except insofar as the value of the assets situated within and without Louisiana are used in determining one of the ratios under Section 606, subd. A. It is not the actual capital employed in the State of Louisiana but the proportion of the entire “taxable capital” which is allocated to-Louisiana, as capital employed in Louisiana, that the tax rate is applied to.
 

 It follows therefore that the allocations-of revenues, investments and bank deposits, made by the Collector are in accordance with the Corporation Franchise Tax Act. Plaintiff admitted that the computations of the Collector are correct if Section 606, subd. B is given the meaning contended for by the Collector.
 

 This brings us now to consider plaintiff’s pleas of unconstitutionality which were-urged by it in the alternative.
 

 The first contention is that the provisions of the statute violate the due process clause of both the Federal and State Constitutions. Fourteenth Amendment of the U. S. Constitution and Sec. 2 of Art. I of the Louisiana Constitution. The plea seems to involve Section 606,. subd. B of the statute which contains the formula under which the intangibles therein mentioned are to be allocated.
 

 
 *185
 
 This brings us back, in a way, to the question of the situs of the intangibles and in connection with the contention of due process violation, we think that the following language from the case of Wheeling Steel Corp. v. Fox, supra, has an important bearing:
 

 “ * * * To attribute to Delaware, merely as the chartering state, the credits arising in the course of the business established in another state, and to deny to the latter the power to tax such credits upon the ground that it violates due process to treat the credits as within its jurisdiction, is to make a legal fiction dominate realities in a fashion quite as extreme as that which would attribute to the chartering state all the tangible possessions of the Corporation without regard to their actual location.”
 

 In applying the formula under Sec. 606, subd. B, the Collector did not attempt to allocate all of plaintiff’s intangibles but only a portion equal to the percentage of capital
 
 employed
 
 in Louisiana by its subsidiaries. Section 601 of the statute, as we emphasized in quoting it at the beginning of this opinion, specifically states that the tax levied is due for the
 
 privilege
 
 of any corporation, domestic or foreign,
 
 to do business, exercise
 
 or
 
 continue
 
 its charter within this State and if it provides a method of allocation which is “fairly calculated” to assign to Louisiana that portion of its investments in, advances to or revenues from a subsidiary company “reasonably attributable” to the business it does here, it meets the requirements of due process under the Fourteenth Amendment of the Federal Constitution. In this connection see Butler Bros. v. McColgan, 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991.
 

 Another ground on which unconstitutionality is urged is that Section 606, subd. B provides a method of double taxation. Assuming that it does, there is no express prohibition as to this form of taxation pointed out to us and there readily comes to mind instances in which methods of double taxation, some not relating to taxes for the privilege of doing business, are involved and, apparently they are not considered to constitute illegal double taxation.
 

 As to the contention that the statute is unconstitutional in that it denies plaintiff the equal protection of laws, all that need be said is that on such issue we have to be governed by the simple rule ■that where a tax affects all persons similarly occupied alike and all property in the same classification, the equal protection clause is not violated. See Matthews v. Conway, 179 La. 875, 155 So. 255 and Interstate Oil Pipe Line Co. v. Guilbeau, 217 La. 160, 46 So.2d 113.
 

 Counsel for plaintiff point out, by way of illustration, certain situations where the tax might result in inequalities in assessment and in its determination under the statute. The cases they suggest
 
 *187
 
 are based on certain hypothetical facts which do not exist in this case. We, of course, are limited to an interpretation of the statute as it has to be applied to the facts of the case before us and in which no discrimination against the plaintiff or in favor of other corporations similarly situated, appears.
 

 We conclude that all the issues presented have been correctly disposed of by the judgment appealed from and for the reasons assigned it is affirmed at the costs of the plaintiff, appellant herein.