129 So.2d 776 (1961)
241 La. 564
UNITED GAS CORPORATION
v.
Rufus W. FONTENOT, Collector of Revenue, State of Louisiana.
No. 45031.
Supreme Court of Louisiana.
April 24, 1961.
Rehearing Denied May 29, 1961.
*777 Chapman L. Sanford, Emmett E. Batson, Richard Alsina Fulton, Frederick S. Haygood, Levi A. Himes, Baton Rouge, for defendant-appellant.
Wilkinson, Lewis, Madison & Woods, Shreveport, Breazeale, Sachse & Wilson, Baton Rouge, for plaintiff and appellee.
HAMITER, Justice.
The instant action was instituted by the United Gas Corporation to recover taxes paid to the defendant, Collector of Revenue for the State of Louisiana (then Rufus W. Fontenot and now Roland Cocreham), which were demanded by such official under the provisions of the Louisiana Corporation Franchise Tax law, LRS 47:601 et seq. (formerly Act 10 of the First Extraordinary Session of 1935, as amended). It is a companion case to United Gas Corporation v. Fontenot, 241 La. ___, 129 So.2d 748. Number 45,030 on the docket of this court, wherein the same plaintiff seeks recovery of taxes assessed and paid under the provisions of the Louisiana Income Tax law, LRS 47:21 et seq. (formerly Act 21 of 1934, as amended).
In the district court the two causes were consolidated, and tried together, because the factual situations in both are practically identical. And, after trial, plaintiff recovered judgments in accordance with the prayers of its petitions.
The appeals to this court, however, are being dealt with separately inasmuch as the two above mentioned statutes are dissimilar to such an extent that (as hereinafter indicated) a decision in one case is not necessarily controlling in the other.
The provisions of our corporation franchise tax law pertinent to this cause recite:
"Section 601. Imposition of tax
"Every domestic corporation and every foreign corporation, exercising its charter * * * shall pay a tax at the rate of one dollar and fifty cents ($1.50) for each one thousand dollars ($1,000.00), or major fraction thereof on the amount of its capital stock, surplus, undivided profits, and borrowed capital determined as hereinafter provided; * * *. The tax levied herein is due and payable for the privilege of carrying on or doing business, the exercising of its charter, or the continuance of its charter within this state.
"Section 602. Determination of taxable capital
"Every corporation taxed under this chapter shall determine the amout of its issued and outstanding capital stock, surplus, undivided profits and borrowed capital as the basis for computing the franchise tax levied under this Chapter and determining the extent of the use of its franchise in this state.

* * * * * *
"Section 606. Allocation of taxable capital
"A. General allocation formula. For the purpose of ascertaining the tax imposed in this Chapter, every corporation subject to the tax is deemed to have employed in this state the proportion of its entire issued and outstanding capital stock, surplus, undivided profits and borrowed capital, computed on the basis of the ratio obtained by taking the arithmetical average of the following ratios:
"(1) The ratio that the net sales and other revenue attributable to Louisiana *778 bears to the total net sales and other revenue. * * *
"(2) The ratio that the value of all of the taxpayer's property and assets situated or used in Louisiana bears to the value of all of its property and assets wherever situated or used. * * *"
The record herein discloses that plaintiff is a corporation organized under the laws of the State of Delaware, and it is engaged principally in the buying, selling and distributing of natural gas in Texas, Mississippi and Louisiana. Within this state its operations began in 1937.
In 1930, long prior to the commencement of its Louisiana activities, plaintiff purchased at the price of $3,140,094 stock numbering 305,688 shares of the Mississippi River Fuel Corporation (constituting 46.65% of the outstanding capital thereof), a corporation organized under the laws of the State of Delaware, and held it solely as an investment. Therefrom plaintiff received in 1949 dividends amounting to $137,559.60. However, during the same year it sold such stock, in the City of New York, for $8,864,952. Also in 1949 plaintiff was paid interest of $178,668.79 on a refund of federal income taxes that had been collected from it in 1936.
In 1950 plaintiff filed its corporation franchise tax return with the Louisiana Collector of Revenue for the calendar year ending December 31, 1949, and it paid therewith $102,781.91. Subsequently, following an audit of the return, the collector demanded and plaintiff paid under protest an additional franchise tax, based on the above mentioned proceeds, of $28,612.09 plus interest of $7,152.04, or a total of $35,765.11.
Within the time prescribed by law plaintiff filed the instant action to recover the protested taxes so paid, it averring that the collector erred in allocating to its Louisiana volume of business: (1) the proceeds from the sale of the stock of the Mississippi River Fuel Corporation, (2) the dividends from the said stock in 1949, and (3) the interest received in 1949 on the refund of federal income taxes paid for the year 1936.
In addition to the above claim of $35,765.11, respecting the protested taxes, plaintiff seeks to recover herein the sum of $9,373.91 that was voluntarily paid by it to the collector, its petition alleging that such was an overpayment of franchise taxes for 1949 which was inadvertently and erroneously made.
Universal recognition has been given to the general rule, established by a fiction of the law, that the situs of intangibles (with which we are here dealing) is at the legal domicile of the owner"Mobilia sequuntur personam" (this plaintiff's, as aforeshown, is in the State of Delaware). However, the courts have also recognized an exception to such rule which is that where certain circumstances exist a state may look behind the mentioned fiction to the realities of the situation to the end that a foreign corporation receiving the benefits furnished by that governmental subdivision may be required to pay its fair and just share of the cost of such benefits. See First Bank Stock Corporation v. State of Minnesota, 301 U.S. 234, 57 S.Ct. 677, 81 L.Ed. 1061, 113 A.L.R. 228. In this connection a corporation may acquire a commercial domicile outside the state of its incorporation. Thus, when it does not operate at its legal domicile and maintains in another state its principal business office, from which its management functions, the latter place is considered as its "commercial domicile". Wheeling Steel Corporation v. Fox, 298 U. S. 193, 56 S.Ct. 773, 80 L.Ed. 1143; First Bank Stock Corporation v. State of Minnesota, supra; Arkansas Fuel Oil Corporation v. Fontenot, 225 La. 166, 72 So.2d 465; and Southern Pacific Co. v. McColgan, 68 Cal.App.2d 48, 156 P.2d 81.
Also it has often been held that, despite the above mentioned fiction, intangibles (for tax purposes) may acquire a situs of their own in a state other than that of *779 the legal domicile of the owning corporation when they are used as an integral part of its business conducted in such other state. This is known as the "business situs" of the intangibles. It may be at the "commercial domicile" of the owner, or it may exist independently of either the legal or commercial domicile of such corporation, since the business situs depends solely on the use of the intangibles in the corporation's activities and in carrying out the scheme of its corporate functions within the taxing state. Wheeling Steel Corporation v. Fox, supra; First Bank Stock Corporation v. State of Minnesota, supra; Arkansas Fuel Oil Corporation v. Fontenot, supra; Bluefields Banana Co. v. Board of Assessors et al., 49 La.Ann. 43, 21 So. 627; Commonwealth v. Columbia Gas & Electric Corporation, 336 Pa. 209, 8 A.2d 404, 131 A.L.R. 927; and State v. Pullman-Standard Car Manufacturing Co., 235 Ala. 493, 179 So. 541, 117 A.L. R. 498. See also 84 C.J.S. verbo Taxation § 116c.
From the record in this cause we cannot conclude that the stock purchased by plaintiff in the Mississippi River Fuel Corporation in 1930, and sold by it in the City of New York in 1949, was ever used in its Louisiana activities (as an integral part thereof) so as to have acquired a "business situs" in this state. The same is true as to the mentioned dividend and interest proceeds.
With respect to the stock plaintiff's officers testified emphatically that it had never been pledged or in any other manner used in connection with the corporate operations in this state. Further, they denied that the corporation had ever engaged in the business of dealing in securities in Louisiana, pointing out that this was the only stock that it had bought and sold.
The defendant collector offered no contradictory evidence, nor has he at any stage of this litigation even suggested that the intangibles on which the protested taxes were demanded had acquired a "business situs" in Louisiana. In fact, he did not even plead in his answer that one existed here therefor; and, as pointed out by the trial judge in his written reasons for judgment, he is "conceding that only a technical commercial domicile is involved."
In this court, as in the district court, the collector bases his defense of the disputed allocations solely on the circumstance of plaintiff's having maintained its commercial domicile in this state, just as he does in the companion case Number 45,030. (Because of the conclusion we have reached it is unnecessary for us to determine in this cause whether the evidence adduced proves that plaintiff has established a commercial domicile in Louisiana. For the purpose of this consideration we may assume that it does.) And, directing attention to the mentioned circumstance, the collector (as is shown by the brief of his counsel) invokes and relies on certain instructions issued by him that purport to set forth the method to be followed in complying with LRS 47:606 which contains the general formula for allocation of capital in ascertaining the franchise tax imposed.
In such instructions it is stated that stocks and bonds should be allocated within and without Louisiana on the basis of the commercial domicile of the taxpayer, and likewise that dividends (other than those of subsidiaries and affiliates) should be allocated to the state in which the commercial domicile is maintained. They also require that interest should be allocated on the same basis as the investments which produce the income. However, the instructions thus invoked and relied on evidence nothing more than the collector's construction of the statute. And they are not pertinent herein in anywise, unless it can be said that they provide a correct application of the statutory provisions (LRS 47:606) in question.
As we view such instructions, they appear to be based on the allocation formula contained in LRS 47:243 that relates solely to the computation of income taxes (as distinguished from franchise taxes with which we are here dealing) on foreign corporations *780 doing business in Louisiana, and hence they can have no effect in this cause. That formula is as follows:
"Section 243. Computation of net allocable income from Louisiana sources
"Items of gross allocable income shall be allocated directly to the states from which such items of income are derived, on the following bases:

* * * * * *
"(3) Other interest, dividends, and profits from sales and exchanges of capital assets consisting of incorporeal property or rights, shall be allocated to the state in which the securities or credits producing such income have their situs, which shall be at the business situs of such securities or credits, if they have been so used in connection with the taxpayer's business as to acquire a business situs, or, in the absence of such a business situs shall be * * * at the commercial domicile of the taxpayer in the case of a corporation * * *." Unlike such formula of the income tax law the one contained in the corporate franchise tax statute, earlier quoted herein and which governs this case, does not provide for an allocation of the intangibles of a foreign corporation to a state wherein its commerical domicile is located. (Italics ours.)
Having pertinency here is the decision in In re Dodge Brothers, Inc., 241 Mich. 665, 217 N.W. 777, 779, a case involving a claim by the State of Michigan for privilege taxes allegedly due by a foreign corporation doing business there. During the course of its opinion the court stated: "Tax exactions, property or excise, must rest upon legislative enactment, and collecting officers can only act within express authority conferred by law. Tax collectors must be able to point to such express authority so that it may be read when it is questioned in court. The scope of tax laws may not be extended by implication or forced construction. Such laws may be made plain, and the language thereof, if dubious, is not resolved against the taxpayer. Credits, by way of deposits in banks, upon accounts receivable, and payments to be received on land contracts, are all intangible assets, and situs thereof is the domicile of the owner, unless fixed elsewhere by some positive tax law. Situs of domicile, with reference to intangibles, is not at all affected by the mere place of business, for the law, short of statute to a different end, does not admit of a so-called business situs changing or interfering with the situs of domicile. In re Pantlind Hotel Co. [232 Mich. 330, 205 N.W. 99, 49 A.L.R. 1291], supra. This is but saying that common-law situs governs unless modified or abrogated by statute.
"The case before us does not involve a property tax or rights of interstate commerce, but only the question of situs of intangible property, under our law, to be considered factors in computing the corporation privilege tax. Does the corporation privilege tax statute modify or abrogate the common-law rule of situs? Such common-law rule of situs may be changed by statute and a situs established for the purposes of a corporation privilege tax apart from that of domicile without offending the fundamental law or judicial pronouncements. Plaintiff, with the privilege of carrying on its business in this state, must comply with the corporation privilege tax law, so far as the express provisions thereof are within the powers of the state. If the statute is inclusive of the mentioned intangible property, as factors in computing the tax, then plaintiff must abide its provisions."
Also appropriate to this controversy is Chestnut Securities Co. v. Oklahoma Tax Commission et al., 173 Okl. 369, 48 P.2d 817. Therein the Oklahoma Supreme Court held, in considering a corporation license statute very similar to ours, that where a foreign corporation owned and held stock solely as an investment and it did not regularly deal in assets of that nature such stock did not acquire a situs in Oklahoma even though the corporation's principal place of business was in that state.
*781 Again, in Endicott, Johnson & Co. v. Multnomah County, 96 Or. 679, 190 P. 1109, 1112, the court, after recognizing the general rule that the situs of intangibles is at the legal domicile of the owner and also the exception that such rule is subject to legislative modification, analyzed the provisions of an Oregon Taxing Statute and said: "When, as already stated, we read these two sections of the Code in the light of their history, and when we do this, remembering that the domicile of the owner prima facie furnishes the situs of personalty for the purposes of property taxation, and that unequivocal words are ordinarily needed in any legislation designed to separate the personal property from the domicile of the owner, it becomes manifest that the Legislature did not attempt to tax notes and accounts arising out of business transactions like those involved here. * * *"
Clearly, our franchise tax law contains no language indicating an intent to abrogate the traditional general rule that intangibles owned by a foreign corporation have their situs at the legal domicile of such owner, except insofar as their use in Louisiana operations would give them a business situs in this state. It does not in any manner provide for the allocation of assets to a state in which the corporation has a commercial domicile, as does our income tax law. Rather, the statutory provisions pertinent here (LRS 47:606A(1) and (2)) refer merely to the allocating for franchise tax purposes "net sales and other revenue attributable to Louisiana" (paragraph A(1)) and "the value of all the taxpayer's property and assets situated or used in Louisiana" (paragraph A(2)), all of which can mean only that the tax is to be based on those assets of the corporation produced in this state or used as an integral part of its local business operations. And, as above pointed out, the record before us fails to disclose that the intangibles in question were ever produced or used by plaintiff in the conduct of its Louisiana activities.
Of course, had this plaintiff owned a majority of the capital stock of the Mississippi River Fuel Corporation (which engaged in business in this state), and hence had substantially controlled its management, business policies and operations, such stock and the income therefrom would have been allocable to Louisiana for franchise tax purposes on the basis of the percentage of capital employed here by that subsidiary corporation. See LRS 47:606B and Arkansas Fuel Oil Corporation v. Fontenot, supra. But such a situation did not exist. The evidence adduced herein conclusively shows that plaintiff never owned more than 46.65 per cent of the stock of the Mississippi River Fuel Corporation and that at no time did it have any control of the latter's affairs. The fact that occasionally the two corporations might have dealt with each other with respect to the sale, purchase and transportation of gas is of no importance in determining this cause. Indisputably, they were separate, independent and distinct entities.
In view of the aforementioned findings and of the pertinent statutory provisions, particularly when they are considered in the light of the principle of law set out above that the authority to tax must be clearly provided for in the taxing statute and any doubt or ambiguity must be resolved in favor of the taxpayer, the intangibles under consideration here should not have been employed in computing the franchise tax due by plaintiff to the State of Louisiana for the calendar year ending December 31, 1949; and it was error for the collector to so employ them.
The authorities cited by the defendant do not support his position herein. Nor are they in conflict with the legal conclusions announced above. Thus, in Arkansas Fuel Oil Corporation v. Fontenot, supra, the court had before it only the issue of the proper allocation of stocks of subsidiaries which is specifically provided for in LRS 47:606B. The contested tax in Wheeling Steel Corporation v. Fox, supra, was clearly authorized by the statute under which it was assessed (see Re Wheeling Steel Corporation *782 Assessment, 115 W.Va. 553, 177 S.E. 535, 104 A.L.R. 802). The same situation prevailed in Chestnut Securities Co. v. Oklahoma Tax Commission, 10 Cir., 125 F.2d 571. In First Bank Stock Corporation v. State of Minnesota, supra, it was held that the taxed intangibles were an integral part of the owner corporation's activities conducted in Minnesota and, therefore, had a business situs and were taxable in that state. And Sinclair Pipe Line Co. v. State Commission of Revenue and Taxation, 184 Kan. 713, 339 P.2d 341, did not provide the issue of whether the assessed tax was authorized by the statute involved.
Although the collector seemingly does not rely on Southern Pacific Co. v. McColgan, supra [68 Cal.App.2d 48, 156 P.2d 87] (decided by one of the seven divisions of the Courts of Appeal of California, not by the highest court of that state), that decision has been considered in the determination of this cause and found to be inapplicable. It is distinguishable by reason of both the statutory provisions and facts involved. Therein, plaintiff (the operator of a transportation business in California) sought to recover franchise taxes paid under protest on dividends received from stock owned by it in nine other corporations. The statute, unlike the instant one, purported to "* * * include in the measure of the tax all net dividend income of corporations doing business in this state, whether the corporation is foreign or domestic, and without regard to whether the securities from which the income is derived have a business situs here, or whether the corporation, if a foreign one, has its commercial domicile here. * * *" As to the facts of the McColgan case, which disclose a situation entirely different from the one here, the court said: "* * * An examination of the stipulation of facts relating to the businesses of the corporations whose stocks are owned by plaintiff will demonstrate that all but one or two of them are engaged in businesses related to, and most of them directly connected with, plaintiff's transportation business. Indeed, in the stipulation, they are described as `affiliated companies.' All but one or two of them underlie the transportation business of plaintiff. The Pacific Fruit Express Company, from whom the major portion of the dividends were received, is directly connected with plaintiff's corporation. * * * The same can be said in varying degrees as to the other stocks involved. None of them were stocks of unrelated companies. All of them obviously were owned by plaintiff to further its transportation business. They play a part in the conduct of that transportation business of which the commercial domicile is in this state. They obviously enter into the exercise of the franchise granted by this state. All but one or two of them in greater or lesser degree, were in companies whose businesses were connected or related to that of plaintiff."
Plaintiff herein, in a separate pleading, has urged that the Louisiana corporation franchise tax law is unconstitutional if it be held that thereunder the protested taxes demanded by this defendant are authorized. In view of our above announced conclusion it is unnecessary to pass upon such plea of unconstitutionality.
While the trial judge was correct in concluding that the allocations complained of herein were improper, and that plaintiff is entitled to recover the taxes paid under protest, we are of the opinion that he erred in ordering a refund of voluntarily paid taxes amounting to $9,373.91, demand for which is made on the allegation of the petition that they constituted an inadvertent and erroneous overpayment. With reference to such demand plaintiff relies on the provisions of LRS 47:1621 reading:
"Refunds of overpayment authorized
"For the purpose of this Chapter, the `overpayment' means a payment of tax, penalty or interest when none was due, or the excess of the amount of tax, penalty or interest paid over the amount due; provided that the power of the collector to refund overpayments shall be as prescribed and limited in this Section.
*783 "The collector shall make a refund of each overpayment where it is determined that:
"(1) The tax was overpaid because of an error in mathematical computation; or
"(2) The tax was overpaid because of a construction of the law contrary to the collector's construction of the law at the time of payment."
The record herein does not disclose that such voluntary payment was made because of an error in mathematical computation. Nor does it show that the sum was paid by reason of a construction of the law contrary to the collector's construction of the law at the time of payment. Rather, it indicates that when the payment occurred both plaintiff and the defendant were of the opinion that the disputed $9,373.91 was due and owing.
For the reasons assigned the judgment appealed from herein is amended by reducing the amount awarded to plaintiff from $45,139.02 to $35,765.11 and, as thus amended, it is affirmed.
FOURNET, C. J., and HAMLIN, J., concur in part and dissent in part with written reasons.
HAMLIN, Justice (dissenting in part and concurring in part).
I am compelled to dissent in part from the majority opinion.
This matter involves franchise tax. LSA-R.S. 14:606(3) provides that for the purpose of ascertaining the tax imposed, every corporation subject to the tax is deemed to have employed in this State the proportion of, among other items, its surplus.
The original brief of appellee concedes that United's principal place of business is Shreveport.
I am of the opinion that the business, as well as the commercial, domicile of United was in Louisiana.
The majority opinion in Case No. 45,030 discloses as to when the stock came into Louisiana and where it was placed; that it did not acquire a situs in any other place; how the stock was carried on United's books; during the argument before this Court, the funds from the sale of the stock were conceded to have gone into "the general pot."
A reference to the financial statement of United will disclose as part of its assets the following:

"Plant, Property, and
 Equipment (Including
 Intangibles)
 Ledger Value $333,084,457"
 _____________

Under the heading of Liabilities appears the following:

"Surplus, Less Amount Accruing to
 Minority Interest:
 Capital 183,754
 Earned 30,499,016
 ___________
 Total Surplus 30,682,770"
 ___________

Under the heading of Consolidated Income and Surplus appears the following:

 "Surplus,
 December 31, 1948 30,682,770"
 ===========

In his supplemental brief, the Collector emphasizes the regulations of the Collector, which he contends is the method to be followed in complying with LSA-R.S. 47:606.
I believe that the Collector is correct in his contention. I quote the following from the reply brief of United:
"Appellant states that the cases of Arkansas Fuel Oil Corp. v. Fontenot, 225 La. 166, 72 So.2d 465, and other cases cited on page 3 of his supplemental brief, hold that the situs or location, of intangibles is at the business situs of such intangibles, or at the commercial *784 domicile of the corporate owner if the intangibles have acquired no business situs elsewhere. The cases do not subscribe to this doctrine. A reading of these decisions will plainly show that, irrespective of commercial domicile, intangibles may acquire a situs for taxation other than at the domicile of their owner only when they have become integral parts of some local business." (First and third emphasis mine.)
It is clear that the stock did not acquire a situs in another State.
To me the answer is simple:While intangibles may acquire a situs for taxation other than at the domicile of their owner, in this matter, the facts, and process of elimination of other states, show that the stock did not acquire a situs in another State and that the business situs of the stock, as well as the commercial domicile of United, was in Louisiana.
To sum up:
1. The stock must have been "surplus" as set forth in LSA-R.S. 47:606(3) and is taxable as such.
2. The stock did not acquire a situs in another state. While it is true that the statute does not mention business situs or commercial domicile, still, under the facts, no other State but Louisiana could be involved, as neither New York nor Delaware could claim a tax because United did absolutely no business in either State. It had to pay a tax somewhere. It could not be absolved from paying the tax.
3. To hold that United should not pay the tax, would absolve it from payment.
"When the legislature gave to the City the power to tax, and confided to her officers the movement of the machinery necessary to realize the tax, it cannot have been intended to invent a clog which at any moment might peremptorily stop its working. This would be offering a stone when one asked for bread. Taxes are the pabulum of Government. Without that food, the political body languishes and dies. The State did not create the City, and indue it with corporate life, and in the same instant benumb and palsy those functions, without the exercise of which life is soon extinct." (Emphasis mine.) Bellocq v. City of New Orleans, 31 La. Ann. 471, 472, 473.
The same can be said of the State's power under the Constitution.
Being in accord with the foregoing holding, I respectfully dissent in part. However, I do concur in the holding as to $9,373.91.
FOURNET, Chief Justice (concurring in part and dissenting in part).
I fully concur with that portion of the majority opinion holding that the plaintiff is not entitled to recover the sum of $9,373.91 that was included in the amount of corporate franchise tax plaintiff paid for the year 1949 without protest, it only being alleged for the first time in its petition in this casein which it seeks to recover additional franchise taxes assessed by the Collector of Revenue following a subsequent audit of plaintiff's records, that plaintiff did pay under protestthat this sum was an overpayment inadvertently and erroneously made.
However, in view of the facts as found in the companion case handed down this day (United Gas Corporation v. Fontenot, 241 La. 488, 129 So.2d 748, No. 45,030 on our docket) between these same parties, and the holding therein with respect to these three identical items of revenue derived from the same intangible interests that are here in controversy, I cannot subscribe to the majority holding that these items of revenue, received in 1949, cannot be taken into consideration in computing the ratio applicable for the purpose of ascertaining the exact amount of franchise tax to be imposed on plaintiff for that year under the provisions of Act No. 10 of the First Extraordinary *785 Session of 1935, as amended by Act No. 201 of 1946, the effective act during the taxable year in question, and which has for its express object the levying of "an annual franchise tax on all corporations for the privilege of carrying on, doing business, the exercising of their charters, or the continuance of their charters, within this State * * *."
Section 1(6) of Act No. 201 of 1946 provides that "After determining the correct amount of its capital stock, surplus, undivided profits and borrowed capital as herein provided, in such form and under such regulations as the Collector may prescribe, and on forms provided by him, every domestic corporation and every foreign corporation, exercising its charter, authorized to do or doing business in this State, subject to compliance with all other provisions of law, except as otherwise provided in this Act, shall pay a tax at the rate of One Dollar and Fifty Cents ($1.50) for each One Thousand ($1,000.00) Dollars, or major fraction thereof, on the amount of its capital stock, surplus, undivided profits, and borrowed capital determined as herein provided; * * *," and "For the purpose of ascertaining the tax hereby imposed, every corporation subject to the tax is deemed to have employed in this State the proportion of its entire issued and outstanding capital stock, surplus, undivided profits and borrowed capital, computed on the basis of the ratio obtained by taking the arithmetical average of the following ratios:
"(a) The ratio that the net sales and other revenue attributable to Louisiana bears to the total net sales and other revenue. * * *
"(b) The ratio that the value of all of the taxpayer's property and assets situated or used in Louisiana bears to the value of its property and assets wherever situated or used. * * *"[1]
In Section 1(3) (b) of the Act of 1935 as amended in 1946, which is substantially the same as R.S. 47:605, it is provided that "For the purpose of ascertaining the tax hereby imposed, * * * in computing surplus and undivided profits there shall be included all reserves other than those for definitely fixed liabilities, reasonable depreciation, bad debts, established valuation reserves, such reserves in all cases made under rules and regulations to be prescribed by the Collector." (The emphasis has been supplied by me throughout the above provisions of the Act of 1935 as amended in 1946.)
Thus it may be seen that the legislature, in clear and unambiguous language, declared the precise method of arriving at the ratio to be used in computing the corporate franchise tax to be due the State of Louisiana in any given year. This method as set out above makes absolutely no mention whatsoever of any "business situs" or "integral part of a business" and uses no language or inference giving rise to the conclusion reached in the majority opinion that by revenue "attributable to Louisiana" in the first part of the arithmetical average the legislature must have intended thereby to limit the revenue from "intangible" interests to those so "integrally" used in the corporation's Louisiana activities as to have acquired what is termed a "business situs" in this state. It is my opinion, from the facts found in the companion case, that have been set out with great particularity, that the items in controversy are unquestionably "revenue attributable to Louisiana" for the year 1949 under the specific provisions of the first portion of the formulae to be used in arriving at the ratio on which the computation of the corporate franchise tax is to *786 be based. See, Southern Pacific Co. v. McColgan, 68 Cal.App.2d 48, 156 P.2d 81; Pacific Western Oil Corp. v. Franchise Tax Board, 136 Cal.App.2d 794, 289 P.2d 287; and Sinclair Pipe Line Co. v. State Commission of Revenue and Taxation, 184 Kan. 713, 339 P.2d 341.
I therefore respectfully dissent from this portion of the majority opinion.
Rehearing denied.
FOURNET, C. J., and HAMLIN and McCALEB, JJ., are of the opinion a rehearing should be granted.
NOTES
[1] The portion of Section 1(6) of Act No. 201 of 1946 beginning with "every domestic corporation" etc. is substantially the same as the language contained in the Revised Statutes of 1950, Section 47:601. Beginning with "For the purpose of ascertaining * * *" and continuing through the remainder quoted prior to this footnote citation, these are Sections 1(4) of the 1946 amendment, and substantially the same as R.S. 47:606A. A (1), and A(2).